THE STATE OF NEW HAMPSHIRE

SUPERIOR COURT

NORTHERN DISTRICT OF HILLSBOROUGH COUNTY


I, John M. Safford, Clerk of the Superior Court of the State of New Hampshire, for the County of Hillsborough, the same being a court of record having a seal, and having custody of the records of the said Superior Court, do hereby certify that the attached is a true copy of the pleadings in the action # 09-C-0587 John Locapo v Brian Colsia, MAK Investments, LLC, Starter Title Services, Diane Claveloux & TD Bank, Trustee Defendant.

In witness whereof I have hereunto
set my hand and affixed the seal
of said Superior Court
this 10th day of November, 2009.


Clerk of Superior Court

STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.                                    SUPERIOR COURT
NORTHERN DISTRICT                                   Docket No. 09-C-587

John Locapo

v.

Brian Colsia, MAK Investments, LLC,
Starter Title Services and Diane Claveloux
and TD Bank, Trustee Defendant

## NOTICE OF FILING OF NOTICE OF REMOVAL

PLEASE TAKE NOTICE that Brian Colsia and MAK Investments, LLC, Defendants in

the above-captioned matter, have filed the attached Notice of Removal, accompanied by a copy

of the Writ of Summons, Petition for Ex Parte Attachment, Writ of Attachment and Trustee

Process, and returns of service in the United States District Court for the District of New

Hampshire, on November 6, 2009.

Respectfully submitted,

BRIAN COLSIA and MAK INVESTMENTS, LLC

By Their Attorneys,

McLANE, GRAF, RAULERSON & MIDDLETON,
PROFESSIONAL ASSOCIATION

Date: _11/6/09_            By: _Coleen M Penacho_
                               Joseph A. Foster       NH Bar No. 838
                               Coleen M. Penacho    NH Bar No. 17738
                               900 Elm Street, P.O. Box 326
                               Manchester, New Hampshire 03105
                               Telephone (603) 625-6464

8\

## Certificate of Service

I hereby certify that on this 6th day of November, 2009, I served the foregoing Notice of Filing of Notice of Removal by mailing copies thereof by first class mail, postage prepaid, to counsel of record and Trustee Defendant:

William E. Aivalikles, Esquire
W. Aivalikles, P.A.
60 Main Street
Nashua, NH 03060

Kenneth D. Murphy, Esquire
Coughlin, Rainboth, Murphy & Lown
439 Middle Street
Portsmouth, NH 03801

TD Bank                              **and**
293 South Main Street                1 Portland Square
Manchester, NH 03102                 Portland, ME 04101

Coleen M. Penacho

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

JOHN LOCAPO

              Plaintiff

v.                                        Civil Action No:

BRIAN COLSIA,
MAK INVESTMENTS, LLC,
STARTER TITLE SERVICES,
DIANE CLAVELOUX,         Defendant

TD BANK,          Trustee Defendant

## NOTICE OF REMOVAL

Pursuant to 28 U.S.C. § § 1441 and 1446, Defendants Brian Colsia and MAK

Investments, LLC ("Defendants" or "Colsia" and "MAK Investments"), give notice that the

Hillsborough County Superior Court civil action captioned <u>John Locapo v. Brian Colsia, MAK

Investments, LLC, Starter Title Services, Diane Claveloux, and TD Bank, Trustee Defendant,</u>

CA. No. 09-C-587 (the "State Court Action") is hereby removed to the United States District

Court for the District of New Hampshire.

### Grounds for Removal

1.      The Defendants submit this Notice of Removal pursuant to 28 U.S.C. §§ 1441 and

1446, which allow them to remove any state court civil action over which the District Courts of

the United States have original jurisdiction.

2.      In his Complaint, Plaintiff, a Massachusetts resident, asserts various common law

and statutory claims against the Defendants, Brian Colsia, MAK Investments, LLC, Starter Title

Services, and Diane Claveloux, all New Hampshire residents. *See* Writ ¶¶ 1-4, attached as

Exhibit A.  Plaintiff asserts that the amount in controversy exceeds $75,000.  *See id.* at Prayers

for Relief.

3.      Further, Locapo filed and was granted a Petition for Ex Parte Attachment against

property of Colsia and MAK Investments.  Some of the attached property is currently being held

by TD Bank, who is, therefore, named as a Trustee Defendant in this action.  As TD Bank is a

trustee defendant, it is a nominal party whose citizenship is not at issue in determining whether

diversity exists between the parties.  *See Selfix, Inc. v. Bisk,* 867 F. Supp. 1333, 1335-1336 (N.D.

Ill. 1994)(If a party to a suit is merely a nominal party, its presence in the suit will not defeat

removal).

A defendant is nominal if there is no reasonable basis for predicting that it will be held

liable in the suit.  *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 369 (7th Cir. 1993).

> A nominal defendant has no ownership interest in the property
> which is the subject of litigation; it holds the subject matter of the
> litigation in a subordinate or possessory capacity as to which there
> is no dispute.  Because the nominal defendant is a trustee, agent, or
> depositary who has possession of the funds which are the subject
> of litigation, he must often be joined purely as a means of
> facilitating collection. When the dispute is resolved, the court
> needs to order the nominal defendant to turn over funds to the
> prevailing party.  A nominal defendant is not a real party in interest
> because it has no interest in the subject matter litigated.  His
> relation to the suit is merely incidental and it is of no moment to
> him whether the one or the other side in the controversy succeeds.
> Because of the disinterested status of the nominal defendant, there
> is no claim against him and it is unnecessary to obtain subject
> matter jurisdiction over him once jurisdiction over the defendant is
> established.

*Id.* (citing SEC Hal v. Cherif, 933 F.2d 403, 414 (7th Cir. 1991), cert. denied,   U.S.  , 112 S. Ct.

966, 117 L. Ed. 2d 131 (1992) (internal citations and quotations omitted).  As TD Bank is merely

the depositary of some of Colsia's and MAK Investments' property, and as it has no interest in

2

the subject matter of the litigation, and there is no reason to believe that it will be held liable in this action, it is merely a nominal defendant and its citizenship has no bearing on the diversity of the parties.

4.      Colsia and MAK Investments may remove the State Court Action to this Court pursuant to 28 U.S.C. § 1441, as this Court has original jurisdiction over this action under the provisions of 28 U.S.C. § 1332 inasmuch as this is a civil action between citizens of different states[1] in which the matter in controversy is alleged to exceed $75,000.

5.      Kenneth D. Murphy, attorney for the Defendants, Starter Title Services and Diane Claveloux, has been contacted regarding this Notice of Removal, and consents to the removal of the State Court Action.

6.      As TD Bank is a nominal defendant, its assent to the removal is not required. *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 369 (7th Cir. Ill. 1993)(nominal or formal parties need not join in removal).

### Procedural Requirements

7.      This Notice of Removal is timely under 28 U.S.C. § 1446(b) in that the first service on the Defendants was made within 30 days of the date of this Notice. *See* Writ of Summons bearing sheriff's service on October 20, 2009.

8.      Copies of all process, pleadings and orders received by the Defendants in the State Court Action are being filed with this Notice of Removal. *See* Exhibits A-D.[2]

9.      Venue is proper pursuant to 28 U.S.C. § 1441(a) because this Court is the United States District Court for the district in which the State Court Action is pending.

---

[1] This Court previously found that diversity jurisdiction exists between Locapo and Colsia, MAK Investments and Starter Title Services. *See* Order of United States District Court, District of New Hampshire, dated April 22, 2009, in Locapo v. Colsia, et. al., Docket No. 08-cv-414-JL, attached hereto as Exhibit E.
[2] Colsia and MAK Investments are also filing, as Exhibit F with supporting attachments, the Objection they filed in the State Court Action to the Ex Parte Attachment that the State Court granted to Locapo.

10.     In accordance with 28 U.S.C. § 1446(d), promptly after filing this Notice of Removal, the Defendants will give written notice of the removal to all parties and will file a copy of this Notice of Removal with the Clerk of the State Court.

11.     Defendants, Colsia and MAK Investments, pursuant to LR 81.1(c) will request an attested copy of the state court record of this matter and will file it with the clerk's office immediately upon receipt.

12.     Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of removing Defendants' rights to assert any defense or affirmative matter including, without limitation, the defenses of (1) lack of jurisdiction over the person; (2) improper venue; (3) insufficiency of process; (4) insufficiency of service of process; (5) failure to state a claim; or (6) any other procedural or substantive defense available under state or federal law.

WHEREFORE, pursuant to 28 U.S.C. § 1441, *et seq.*, Defendants Colsia and MAK Investments request:

A.     Upon compliance with the filing and notice provisions of 28 U.S.C. § 1446 that this case stand removed to this Court;

B.     The Hillsborough County Superior Court shall proceed no further in this case unless it is remanded; and

C      This Court shall make appropriate orders to implement the removal.

4

Respectfully submitted,

BRIAN COLSIA and MAK INVESTMENTS, LLC

By their attorneys,

McLANE, GRAF, RAULERSON &
MIDDLETON, PROFESSIONAL ASSOCIATION

Date:  November 6, 2009          By:____/s/ Coleen M. Penacho_____
                                     Joseph A. Foster        NH Bar No. 838
                                     Coleen M. Penacho     NH Bar No. 17738
                                     900 Elm Street, P.O. Box 326
                                     Manchester, NH 03105-0326
                                     Telephone: 603-625-6464
                                     joseph.foster@mclane.com
                                     coleen.penacho@mclane.com

## Certificate of Service

I hereby certify that on November 6, 2009, a copy of the foregoing Notice of Removal was forwarded via first class mail, postage prepaid to William Aivalikles, Kenneth Murphy, and TD Bank.

                         /s/ Coleen M. Penacho
                         Coleen M. Penacho

## STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.                                              SUPERIOR COURT
NORTHERN DISTRICT                                             Docket No. 09-C-587

John Locapo

v.

Brian W. Colsia
MAK Investments, LLC
Starter Title Services
Diane Clavelous
and
TD Bank, Trustee Defendant

## DEFENDANTS, BRIAN W. COLSIA'S AND MAK INVESTMENTS, LLC'S OBJECTION TO PLAINTIFF'S PETITION FOR EX PARTE ATTACHMENT AND REQUEST FOR HEARING

Defendants, Brian Colsia and MAK Investments, LLC, by and through their attorneys, McLane, Graf, Raulerson & Middleton, Professional Association, hereby object to the attachment granted to Plaintiff and request a hearing on their Objection.[1]  In support of this Objection and Request for Hearing, Defendants submit herewith a Memorandum of Law that is incorporated herein by reference.

WHEREFORE, Brian Colsia and MAK Investments, LLC hereby request that this Court:

A.     Schedule a hearing on Defendants' Objection to the attachment granted to Plaintiff;

B.     Dissolve the ex parte attachment granted to Plaintiff;

C.     Grant attorneys fees and costs to the Defendants; and

D.     Grant such other and further relief as is just and equitable.

---

[1] Defendants are filing this objection and request for hearing pursuant to RSA 511-A:2 and court rules requiring that this objection and request be made within 14 days after service.  Defendants are planning to remove this action to federal court but have to coordinate with other defendants, and therefore, cannot file the notice of removal prior to the deadline for objecting to this ex parte attachment.  The filing of this objection should not be interpreted as a waiver of Defendants' right to remove this action to federal court.

- 1 -

Respectfully submitted,

MAK Investments, LLC
Brian W. Colsia

By their Attorneys,

McLANE, GRAF, RAULERSON & MIDDLETON,
PROFESSIONAL ASSOCIATION

Date: November 3, 2009     By: _____

Joseph A. Foster NH Bar No. 838
Coleen M. Penacho, NH Bar No. 17738
900 Elm Street, P.O. Box 326
Manchester, New Hampshire 03105
Telephone (603) 625-6464

## Certificate of Service

I hereby certify that on this 3rd day of November, 2009 a copy of Defendants' Brian W. Colsia's and MAK Investments, LLC's Objection to Plaintiff's Petition for Ex Parte Attachment and Request for Hearing was mailed, via first class mail, to counsel of record:

William E. Aivalikles, Esquire
W. Aivalikles, P.A.
60 Main Street
Nashua, NH 03060

Kenneth D. Murphy, Esquire
Coughlin, Rainboth, Murphy & Lown
439 Middle Street
Portsmouth, NH 03801

TD Bank     and
293 South Main Street     1 Portland Square
Manchester, NH 03102     Portland, ME 04101

_____
Coleen M. Penacho

- 2 -

STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.                                           SUPERIOR COURT
NORTHERN DISTRICT                                          Docket No. 09-C-587

John Locapo

v.

Brian W. Colsia
MAK Investments, LLC
Starter Title Services
Diane Claveloux
and
TD Bank, Trustee Defendant

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' BRIAN W. COLSIA'S AND MAK INVESTMENTS, LLC'S OBJECTION TO PLAINTIFF'S PETITION FOR EX PARTE ATTACHMENT AND REQUEST FOR HEARING</u>

### <u>INTRODUCTION</u>

This action is yet another episode in the Plaintiff's ongoing attempt to pursue a meritless claim against the Defendants. Although Locapo attempts, in his Writ, to color himself as a wide-eyed consumer being defrauded by worldly businessmen, that is hardly the case. Locapo himself is a businessman who owned his own landscaping business, a business with gross income of about $685,000 in 2005, over $1 million in 2006, and approximately $643,000 in 2007[1]. Further, this case is about a commercial transaction, not a consumer one.[2]

On or about October 7, 2009 the Plaintiff, John Locapo brought this action against Brian Colsia, MAK Investments, Starter Title Services and Diane Claveloux, alleging various common law and statutory claims. At the same time, Locapo requested, and was granted, a $1 million ex parte pre-judgment attachment of Colsia's and MAK Investment's property. Locapo, however,

---

[1] *See* Statement of Financial Affairs in Bankruptcy Petition for A Precise Maintenance, Inc., Locapo's business, a copy of which is attached hereto as Exhibit C.
[2] Although Locapo attached numerous documents to his Writ, those documents are all in regard to consumer transactions, and are not, in any way, relevant to Locapo's action here.

does not meet the high standard required to justify a pre-judgment attachment. That standard requires him to show, by more than a mere preponderance of the evidence, that he will ultimately prevail on the merits and obtain a judgment in an amount equal to, or greater than, the attachment. Plaintiff cannot do so for several reasons.

First, Plaintiff failed to disclose to the Court material facts that demonstrate that there is absolutely no merit in his underlying action. Specifically, Plaintiff alleges that he had an oral contract with Colsia to purchase property in Milford, an agreement that, even if it did exist would not be enforceable. He fails to mention, however, that, what he, in fact, had was a written agreement to purchase an option on the property, not an agreement to purchase the property itself. Second, he alleges that Colsia was to assist him in finding financing for the acquisition but failed to inform the court that after entering into the agreement, he filed his business and himself in chapter 7 bankruptcy proceedings. Plaintiff also failed to inform the Court that he had previously filed a similar action in federal court, an action that was dismissed because Plaintiff had failed to schedule the action as a potential claim in his previous bankruptcy filing. Although the court dismissed the action without prejudice so that Plaintiff would have the opportunity to cure his failure to schedule the claim, Plaintiff has not done so. Finally, the doctrine of judicial estoppel bars Plaintiff from bringing this action.

## FACTS

In the winter and spring of 2005-2006, Plaintiff and Defendant Colsia met and agreed, in writing, that Plaintiff would be granted the rights in a Lease and Purchase Option (the "Option") for property located at 40 Nashua Road, Milford, N.H. (the "Property"). See Exhibit A, Affidavit of Brian W. Colsia (hereinafter, "Colsia Aff.") at ¶ 7. At that time, Golden Key Management, LLC (hereinafter "Golden Key") held the Option because of the agreement, dated

2

February 9, 2005, that it entered into with 40 Nashua Street, LLC, the owner of the Property. *See Colsia Aff. at ¶ 3, Exhibit 1 to Colsia Aff..*

MAK had acquired rights in the Option by acquiring Golden Key Management for $25,000 in May of 2005. *See Colsia Aff. at ¶5.* Per the terms of the Option, the holder had the right to lease the premises through February 9, 2008, at a cost of $3,463 per month. *See id. at* ¶ 4, Exhibit 1 to Colsia Aff. at ¶ 2. The holder was also granted an option to purchase the property for $500,000 plus the amount outstanding on an existing first mortgage, which as of the date of the Option was about $225,000. *See Colsia Aff. at ¶ 4.*

Subsequent to buying Golden Key, Defendants caused about $300,000 to be invested into the Premises as improvements. *See id. at ¶ 6.* Per the terms of the Option, the Option holder was entitled to be reimbursed for the improvements by 40 Nashua Street, LLC if the option to purchase was never exercised. *See id. at ¶ 4.*

Locapo alleges that he paid for the down payment and first payment on the purchase of the Property. See Plaintiff's Writ at ¶ ¶ 18, 20. In fact, Defendants offered and the Plaintiff agreed to pay to acquire the rights to the option for $450,000. *See Colsia Aff. at ¶ 7.* The parties agreement was memorialized by an Assignment of Lease with Option to Purchase dated as of the 24th day of April, 2006, a copy of which is attached hereto as Exhibit 3 to Colsia Aff. (hereinafter the "Assignment"). Per the express terms of the Assignment, Locapo agreed to pay $300,0000 in cash (which largely reimbursed Defendants for the improvements to the Premises), $125,000 with a Note secured by the property located at 12-16 Hovey Street, and perform $25,000 of landscaping for Defendant's benefit. *See Colsia Aff. at ¶ 7, Assignment at ¶ 1.* Locapo performed as agreed. [3]

---

[3] Mr. Locapo has never paid the $125,000 Note. It is secured by a second mortgage on property owned by Mr. Locapo in Massachusetts.

Per the express terms of the Assignment and consistent with the Option, in order to acquire the Premises, Mr. Locapo was required to pay $500,000 and pay the balance of the Bank of New Hampshire Mortgage, about $225,000. *See* Colsia Aff. at ¶ 4, 7; Assignment at ¶ 2.f. At the time the Assignment was executed, Locapo asked Colsia to assist him in locating financing. Colsia indicated he would make efforts but never once guaranteed success. *See* Colsia Aff. at ¶ 8. The terms of the Assignment contain no obligation on MAK or Colsia to assist with financing. Instead, the Agreement provides: "This Agreement is intended to be a full and final expresiion [sic.] of the agreement of the parties." *See* Assignment at ¶ 5. Further, Locapo's Writ does not allege that Colsia guaranteed that he would find financing. Instead, it notes that Colsia was to "help" and "assist" in obtaining financing.

Ultimately, Locapo was unable to obtain financing and the option lapsed. A variety of causes lead to this inability to obtain financing including a tougher market for financing real estate transactions, but chief among them was Locapo's financial problems, which came as a surprise to Colsia when he found out about them. *See* Colsia Aff. at ¶ 8. On or about September 17, 2007 the Plaintiff filed a voluntary Chapter 7 bankruptcy case. *See* Bankruptcy Petition of John Locapo, a copy of which is attached hereto as Exhibit B. The Petition reflects over $380,000 of unsecured debt and that Mr. Locapo had no earnings other than from Workmen's Compensation. See *id.* Shortly thereafter the Plaintiff caused his landscaping company, A Precise Maintenance, Inc. to file for chapter 7. *See* Voluntary Bankruptcy Petition of A Precise Maintenance (hereinafter "Precise Maintenance Petition"), a copy of which is attached hereto as Exhibit C.

Locapo did not include this action as a potential claim in his bankruptcy schedules. Further, even though Locapo now alleges that he became aware of the basis for his claim in

October 2007, when he amended his bankruptcy schedules in November 2007, he still failed to

list this action as a potential claim.  *See* Order of the United States District Court, District of New

Hampshire, Civil No. 08-CV-414JL, dated April 22, 2009 (hereinafter, "Federal Court Order") a

copy of which is attached hereto as Exhibit D at 3-4.  He also failed to inform the trustee of the

claim when he was examined by the trustee under oath at the meeting of creditors held on April

14, 2008 pursuant to § 341 of the Bankruptcy Code.  In fact, in response to a question about

whether he had any claim of any kind, pending or not, the Plaintiff, under oath, said no.[4]  *See*

Transcript of Chapter 7 - § 341 Meeting at 3, a copy of which is attached hereto as Exhibit E.

The bankruptcy court accepted this as true when it found that Locapo had no nonexempt

property to be distributed and granted him a discharge.  *See* Federal Court Order at 4-5.

   Plaintiff filed an action similar to this one in the United States District Court for the

District of New Hampshire ("Federal Court") in October 2008.  *See* Federal Court Order.  Colsia

and MAK Investments filed a Motion to Dismiss that action which the Federal Court granted.

*See id.* at 2, 10-11.  The Federal Court held that Locapo could not bring the action because he

was not the real party in interest, as the claim was property of the bankruptcy estate such that the

Bankruptcy Trustee was the proper party to pursue the claim.  *See id.*  This was due to Locapo's

failure to list the claim on his bankruptcy schedules so that the claim was never administered by

the Trustee.  *See id.* at 6-7.  The Court dismissed the action without prejudice for the purpose of

allowing the Plaintiff to seek to reopen the bankruptcy in order to amend the bankruptcy

---

[4] A disk of the meeting was obtained from the Trustee and transcribed by a technical document specialist at the
McLane Law Firm.  The following question was asked and reply provided:
 *Trustee: "Do you believe you may have a claim against any one for any reason  whether you've actually filed a
lawsuit or not?"*
Mr. Locapo:      "No."

schedules to include this claim. *See id.* at 10-11. The Trustee could then decide whether to pursue the claim or abandon it, thereby allowing Plaintiff to pursue it on his own. *See id.*

While the Plaintiff has reopened the bankruptcy case, he has not amended the bankruptcy schedules to include this claim. Instead, the plaintiff did not inform the bankruptcy court that the case had been dismissed and asked the trustee to intervene. *See* Debtor's Petition to Reopen Bankruptcy, filed May 14, 2009, a copy of which is attached hereto as Exhibit F. The Trustee took no action and the case was then closed. *See* Order of United States Bankruptcy Court, District of Massachusetts (Western Division), dated May 28, 2009, a copy of which is attached hereto as Exhibit G. Locapo tried to reopen a second time but the bankruptcy court did not permit it, again noting the Trustee's previous failure to take over the case. *See* Debtor's Petition to Reopen Bankruptcy, filed July 22, 2009; Order of United States Bankruptcy Court, District of Massachusetts (Western Division), dated July 24, 2009, copies of which are attached hereto as Exhibits H and I.

Further, in Locapo's prior action, the Federal Court found that Locapo's claims accrued prior to his filing for bankruptcy such that he had a duty to list them on his bankruptcy schedules. Federal Court Order at 7. Notably, contrary to Locapo's current allegations that it was in October 2007 that Colsia informed Locapo that he would not be able to assist him in obtaining financing, Locapo's Federal Court Complaint alleged that this occurred in July 2007. *Id.*

## ARGUMENT

### A.    Standard of Review

In order to obtain an ex parte pre-judgment attachment, the plaintiff must establish his basic right to recovery, and the amount thereof, and that he is in substantial danger the property sought to be attached will be damaged, destroyed, concealed, or removed from the state and

placed beyond the attachment jurisdiction of the court.  RSA 511-A:8.  If the defendant objects

to the ex parte attachment, the court must hold a hearing on that objection.  RSA 511-A:3.

At the hearing, the burden is on the plaintiff to show that there is a reasonable likelihood

that he will recover judgment including interest and costs on an amount equal to or greater than

the amount of the attachment.  *Id*.  In order to sustain that burden the plaintiff must show that he

will <u>ultimately prevail</u> on the merits and obtain judgment in the requested amount, and this

showing must be established <u>by proof greater than a mere preponderance of the evidence</u>.

*United States v. Leroux*, 2007 U.S. Dist. LEXIS 18103 at *2 (D.N.H. 2007); *Chi Shun Hua Steel

Co. v. Crest Tankers, Inc.*, 708 F. Supp. 18, 25 (D.N.H. 1989); *Diane Holly Corp. v. Bruno &

Stillman Yacht Co.*, 559 F. Supp. 559, 561 (D.N.H. 1983)(emphasis added).  Given the

Hillsborough Court's grant of a one million dollar ex parte attachment Locapo has the heavy

burden of demonstrating to the Court, by more than a preponderance of the evidence, that he will

obtain a judgment of at least one million dollars.  As Locapo cannot do so, he is not entitled to an

attachment on Defendants' property.

**B.      There is No Merit to Locapo's Claims Against Colsia and MAK Investments,
Therefore He Cannot Show That He Will Ultimately Prevail on the Merits.**

Plaintiff's claim appears to be grounded on two notions.  First that Colsia tried, allegedly

fraudulently, to sell real property he could not sell, and second that if he could sell such property,

that he agreed to arrange for financing for the purchase of that Property and failed to do so.  Both

notions are false and without a stitch of factual support to establish that Locapo will ultimately

prevail on the merits.

1.    **Locapo Did Have an Agreement With Colsia Regarding the Premises But It Was An Agreement to Purchase an Option on the Property not an Agreement to Purchase the Property.**

Although Mr. Locapo alleges that he had an oral agreement with Mr. Colsia to purchase the Property[5], he failed to notify the Hillsborough Court that what he, in fact, had was a written agreement with MAK Investments regarding the Property.  That agreement, however, was not an agreement to purchase the Property, but rather, was the assignment of a Lease and Purchase Option (the "Option") on the Property.  *See* Colsia Aff. at ¶ 3-5, 7.  In fact, the agreement that Locapo signed before a notary is entitled, "Assignment of Lease with Option to Purchase."  *See id.* at ¶ 7, Assignment.  The monies that Locapo paid to Colsia and MAK Investments, which he claims were for the down payment and first payment on the purchase of the property, *see* Writ at ¶ ¶ 18, 20, were actually for the purchase of the Option.  *See* Colsia Aff. at ¶ 7.  The Option could result in a transfer of the Property but whether that happened was in Locapo's control.  Had Locapo come up with the $500,000 plus the balance of the TD Bank mortgage balance he could have taken title to the Property.  Due to Locapo's own financial problems, including his personal and business bankruptcy filings, however, that did not occur.  *See* Bankruptcy Petitions of Locapo and A Precise Maintenance.

Moreover, the Federal Court, in Locapo's action there, recognized the true nature of the parties' agreement.  The Federal Court noted, "[t]he written agreement between Locapo and MAK, however, explicitly states that MAK was assigning 'its right and interest in a certain lease' for the building – which included an option to purchase – rather than the building itself, and acknowledges Locapo's obligation, as assignee, to continue paying rent."  Federal Court Order at fn 6.  The Federal Court further stated that this left "no doubt that Locapo knew, by the

---

[5] Even if the parties did have an oral agreement regarding the purchase of the Premises, the Statute of Frauds prevents an action regarding a contract on the sale of land unless that contract is in writing.  RSA 506:1

time he signed it at the latest, that neither Colsia nor MAK in fact owned the building, regardless of what they might have said beforehand." *Id.* Finally the court noted that the proceeds that Locapo paid were the consideration paid for acquiring the option, not payment to acquire the building. *Id.* As the parties' agreement was for an option to purchase, and the monies Locapo paid were for the purchase of that option, Locapo cannot show that he will ultimately prevail in this action.

> ### 2.    Locapo's Claim Regarding Colsia's Failure to Obtain Financing for Him Is Equally Without Merit.

Locapo blames his inability to exercise the option to purchase on Colsia's failure to provide a source of financing.  It is true that financing could not be found; it is untrue that the fault lies with Colsia.  Colsia never, ever promised financing.  *See* Colsia Aff. at ¶ 8; Assignment.  The Assignment provides no obligation on Colsia to assist at all.  Nevertheless, he agreed to help, and did so, but never guaranteed a result.  *Id.*

Notably, the Writ nowhere alleges Colsia guaranteed a result.  It notes instead that Colsia "was to *help* Locapo in obtaining the first payment," Writ, ¶ 16 and "was to "*assist* "assist him in obtaining financing for the Property." Writ, ¶ 35.  Those are carefully drafted allegations which are fundamentally true but are intended to mislead.  They do not say the Mr. Colsia *would* not help; they accurately say he *could* not help.  The reason financing could not be obtained had nothing to do with Colsia's efforts but had everything to do with Locapo's financial circumstances.  By September of 2007 Locapo was in such debt he was forced to file for Chapter 7 relief.  Exhibits B, C.  A Chapter 7 debtor cannot reasonably expect to obtain financing for a project of the Property's size and scope.  Colsia cannot be held responsible for a loan Locapo could not get due to his own financial problems.  Locapo, therefore, cannot show that he will ultimately prevail on the merits and the pre-judgment attachment should be dissolved.

**C.      Locapo's Action is Also Barred by the Doctrine of Judicial Estoppel.**

The doctrine of judicial estoppel exists to "protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50. *See also Patriot Cinemas, Inc. v. General Cinema Corp.*, 834 F.2d 208, 213 (1st. Cir. 1987)(the doctrine bars "self-serving self-contradiction or playing fast and loose with the court.").

Judicial estoppel is an equitable doctrine, and while there is not a precise test for applying it, courts have found that the following factors must be present for judicial estoppel to apply. First, the estopping position and the estopped position must be directly inconsistent, and second, the responsible party must have succeeded in persuading a court to accept its prior position. *Thore v. Howe*, 466 F.3D 173 (1st Cir. 2006); *Alternative System Concepts, Inc. v. Synopsys, Inc.*, 374 F.3d 23 (1st Cir. 2004).

These factors are present here. When Locapo filed for bankruptcy in September 2007, he failed to list this action as a potential claim on his bankruptcy schedules (which are signed under pains and penalties of perjury). *See* Federal Court Order at 3-4. Further, even though Locapo now alleges that he became aware of the basis for his claim in October 2007, Writ at ¶ 35, when he amended his bankruptcy schedules in November 2007, he still failed to list this potential claim. *See id.* at 4. He also failed to inform the trustee of the claim when he was examined by the trustee under oath at the meeting of creditors held on April 14, 2008 pursuant to § 341 of the Bankruptcy Code. *See* Transcript at 3. In fact, in response to a question about whether he had any claim of any kind, pending or not, the Plaintiff, under oath, said no. *Id.* The bankruptcy court accepted this position when it found that Locapo had no nonexempt property to be distributed and granted him a discharge. *See* Federal Court Order at 4.

10

Now more than two years later, and after failing to be allowed to bring a similar action in Federal Court because that Court found that this claim did accrue prior to the bankruptcy and was, therefore, not properly scheduled, Locapo now alleges that he does have such a claim. This is directly inconsistent with the position Locapo took in the bankruptcy court, a position that Locapo succeeded in persuading the bankruptcy court to accept. Courts have dismissed such claims in similar circumstances. *See Payless Wholesale Distributors, Inc. v. Alberto Culver (P.R.) Inc* , 989 F.2d 570, 571 (1st. Cir. .), cert. denied, 510 U.S. 931 (1993)(finding that it would be an abuse of judicial process to allow a debtor to resurrect and obtain relief on a claim having previously obtained judicial relief on the representation that no claims existed). Like the Plaintiff in *Payless*, Locapo should not be allowed to abuse the judicial process to resurrect a claim that he previously certified did not exist.

### D.     Even if There Was Merit to Locapo's Claim, Locapo Did Not List It on His Bankruptcy Schedules, and, Therefore, Cannot Pursue this Action.

Locapo also failed to notify this Court that he filed for bankruptcy in September 2007, *see* Bankruptcy Petitions of Locapo and A Precise Maintenance, and that, he failed to list this action as a potential claim in his bankruptcy schedules. *See* Federal Court Order at 3-4. He also failed to mention that, in October 2008, he filed an action similar to this one in Federal Court and that Court dismissed his action because he had failed to list it as a potential claim on his bankruptcy schedules. *See id.* Since Locapo failed to list this as a potential claim, the Federal Court held that the claim had never been administered, and thus, it had not been abandoned to Locapo such that he could pursue it on his own. *Id.* at 9-10. Further, the court dismissed Locapo's action without prejudice and suggested that he might be able to reopen the case in order to amend the bankruptcy schedules to properly list this claim. *Id.* Then if the claim was subsequently abandoned to Locapo, he could pursue it on his own. *Id.* Locapo did reopen the

case, but never amended his bankruptcy schedules. The plaintiff did not inform the bankruptcy court that the case had been dismissed but instead asked the trustee to intervene. *See* Debtor's Petition to Reopen Bankruptcy, filed May 14, 2009. The Trustee took no action and the case was then closed. *See* Order of United States Bankruptcy Court, District of Massachusetts (Western Division), dated May, 28, 2009. Locapo tried to reopen a second time but the bankruptcy court did not permit it to be reopened again noting the Trustee's previous failure to take over the case. *See* Debtor's Petition to Reopen Bankruptcy, filed July, 22, 2009; Order of United States Bankruptcy Court, District of Massachusetts (Western Division), dated July, 24, 2009. Because the schedules were never amended the case still belongs to the bankruptcy estate and cannot be pursued. 11 U.S.C. 554(d) (property of the estate that is not abandoned and that is not administered in the case remains property of the estate); *Stanley v. Sherwin-Williams Co.*, 156 B.R. 25, 26-27 (W.D. Va. 1993) (citing *Vreugdenhill v. Navistar Int'l Transp. Corp.,* 950 F.2d 524, 526 (8th Cir.1991); *In re Pace,* 146 B.R. 562, 566 (9th Cir. BAP 1992); *In re Fuller,* 146 B.R. 633, 639 (Bankr.S.D.N.Y.1992)(for property to be abandoned by operation of law, debtor must formally schedule the property before the close of the case; it is not enough that the trustee learns of the property through other means); *Mele v. First Colony Life Ins. Co.*, 127 B.R. 82, 85-86 (D.C. 1991)(mere fact trustee was notified of pending lawsuit, but failed to administer it, will not necessarily mandate a finding of implied abandonment; in order to prove implied abandonment, plaintiff must show at a minimum that the trustee made a reasonable inquiry as to the value of estate property); Federal Court Order at 10.

## CONCLUSION

As there is no merit to Plaintiff's claims, he cannot meet his heavy burden of showing, by more than a mere preponderance of the evidence, that he will prevail on the merits and obtain a judgment of at least one million dollars. Even if there was merit to Plaintiff's claim, he does not have standing to make the claim since the claim is still property of the bankruptcy estate. The Plaintiff's petition, therefore, should be denied and the ex parte pre-judgment attachment vacated. Pursuant to RSA 511-A:3, Defendants request that the Court schedule a hearing on its Objection.

Respectfully submitted,
MAK INVESTMENTS, LLC and
BRIAN W. COLSIA

By their Attorneys,

McLANE, GRAF, RAULERSON & MIDDLETON,
PROFESSIONAL ASSOCIATION

Date: November 3, 2009          By: _____
Joseph A. Foster NH Bar No. 838
Coleen M. Penacho NH Bar No. 17738
900 Elm Street, P.O. Box 326
Manchester, New Hampshire 03105
Telephone (603) 625-6464

## Certificate of Service

I hereby certify that on this 3rd day of November, 2009 a copy of this Memorandum of Law in Support of Defendants' Brian W. Colsia's and MAK Investments, LLC's Objection to Plaintiff's Petition for Ex Parte Attachment and Request for Hearing was mailed, via first class mail, to counsel of record:

William E. Aivalikles, Esquire
W. Aivalikles, P.A.
60 Main Street
Nashua, NH 03060

Kenneth D. Murphy, Esquire
Coughlin, Rainboth, Murphy & Lown
439 Middle Street
Portsmouth, NH 03801

TD Bank                         **and**
293 South Main Street           1 Portland Square
Manchester, NH 03102            Portland, ME 04101

                                _____
                                Coleen M. Penacho

14

**EXHIBIT A**

THE STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS.                                      SUPERIOR COURT
NORTHERN DISTRICT

John Locapo

v.

Brian W. Colsia
and
MAK Investments, LLC
and
Starter Title Services
and
Diane Claveloux
and
TD Bank, Trustee Defendant

Docket No. 09-C-587

### AFFIDAVIT OF BRIAN W. COLSIA

I, Brian W. Colsia, on oath, do depose and say:

1. I am a business man and reside in Merrimack, New Hampshire.  I am the managing
   member of MAK Investments, LLC.

2. MAK Investments, LLC is involved in all aspects of the real estate business including
   buying and selling properties, loaning funds for commercial investments into real estate,
   and real estate development.

3. In May of 2005 I became interested in acquiring the right to purchase property with an
   address of 40 Nashua Street, Milford, N.H. ("Premises").   At that time, the right to
   purchase the Premises was held by Golden Key Management, LLC  per a Lease
   Agreement with Option to Purchase Attached hereto as Exhibit 1. ("Option Agreement").

4. Pursuant to the Option Agreement, Golden Key could lease the premises for a few years
   for relatively low rental payments, keep the rents paid by tenants, and also be reimbursed
   for capital improvements made to the Premises.  Also, per the agreement, the holder of
   the agreement had the right to purchase the Premises for $500,000 plus payment of the
   balance due on the first mortgage which was about $225,000.

5. To obtain the right to acquire the Premises, I bought Golden Key Management from its owner, Dorothy Chapman, for the sum of $25,000. A copy of the check and the assignment is attached hereto as Exhibit 2.

6. Through MAK Investments I made significant improvements to the Premises. I expended about $300,000. Ultimately, however, I decided I did not want to acquire the Premises myself.

7. In or around the winter of 2005-2006 I met John Locapo. Mr. Locapo was in the landscaping and construction business and indicated he might want to acquire the Premises. We negotiated terms and ultimately he agreed to acquire the rights under the Option Agreement for $450,000. The terms were that he first would pay $300,000 which would reimburse me for the leasehold improvements I had made, and the rest in the form of a $125,000 Note due in on January 1, 2008, secured by a second mortgage on a home he owned in Massachusetts and $25,000 of labor. Our agreement was memorialized by the Assignment of Lease with Option to Purchase attached hereto as Exhibit 3. Mr. Locapo was also made the Manager of Golden Key Management. Per the terms of the Assignment Agreement Mr. Locapo had the right to acquire the Premises according to the same terms I had enjoyed: Payment of $500,000 plus the balance due on the first mortgage.

8. In our discussions, I did agree to help Mr. Locapo find financing necessary to exercise the option to purchase. I never guaranteed, however, that I could find financing for him. I did in fact make efforts to find a loan when he indicated he was ready but by then Mr. Locapo had already filed for Chapter 7 bankruptcy. Mr. Locapo's bankruptcy filing took me by surprise. He had never indicated when he acquired rights to the option that he had financial problems. I only learned about his problems later. Mr. Locapo financial condition coupled with a tougher market for financing real estate transactions made it very difficult to find a loan package and ultimately I was unable to do so.

Further, the Affiant sayeth not.

Dated: _November 2, 2009_

_____
Brian W. Colsia

STATE OF NEW HAMPSHIRE
COUNTY OF HILLSBOROUGH

Sworn to and subscribed before by Brian W. Colsia the foregoing as true and correct to the best of his knowledge and belief.

_____
Notary Public

My Commission Expires: _July 13, 2010_

AMY NADEAU-JUSTIN
MY
COMMISSION
EXPIRES
JULY 13, 2010
NOTARY PUBLIC
NEW HAMPSHIRE

2

EXHIBIT 1

# LEASE AGREEMENT WITH OPTION TO PURCHASE

**40 Nashua Street LLC**, a New Hampshire Limited Liability Company with a principal office at 2 Jowders Drive, Wilton, New Hampshire 03086 ("Lessor")

Leases To:

**Golden Key Management LLC**, a New Hampshire Limited Liability Company with a principal place of business at 32 Balch Farm Road, Bennington, New Hampshire 03442 ("Golden Key")

A property located at 40 Nashua Street in Milford, New Hampshire and being the property conveyed to Nancy Fraser to 40 Nashua Street LLC by deed dated August 31, 2000 and recorded in the Hillsborough County Registry of Deeds in Book 6285, Page 395 ("the property"). The property also includes all fixtures and any appliances owned by Lessor.

On The Following Terms:

1.  Golden Key agrees to lease as a whole property Lessor's real estate at 40 Nashua Street, Milford, New Hampshire, which contains 8 residence units and 2 commercial units, from 40 Nashua Street LLC.

2.  The monthly lease payment, calculated on triple net rental basis, will be $3,463. This payment includes principal, interest, taxes and insurance. Golden Key also agrees to pay all utilities, including water and sewer, and fire alarm fee for the property. If payment is not made by the 15th there will be a $200 late fee.

3.  The monthly lease payment is subject to change to reflect increases or decreases in taxes and insurance.

4.  This lease shall begin on February 10, 2005 and be in effect until February 9, 2008.

5.  The first payment is due at lease signing.

6.   Golden Key, or its assigns, shall have the option of purchasing the property at any time
     during the lease period. The purchase price will be $500,000 plus the then remaining
     balance of the existing mortgage with Bank of New Hampshire (account #9380127716-
     09422180-000-99). The mortgage balance as of January 10, 2005 was approximately
     $227,370. The balance will gradually decrease in accord with the existing amortization
     schedules.

7.   Golden Key will give Lessor (40 Nashua Street LLC) 2 months notice of its intent to
     purchase the building prior to any schedule closing date.

8.   Lessor (40 Nashua Street LLC) agrees to keep the mortgage, insurance and taxes current
     and up to date on the property. Lessor will provide Golden Key with a copy of its most
     recent mortgage statement every six months. Golden Key may request copies of Lessor's
     mortgage statements more often than that but the cost of making such copies will be paid
     by Golden Key. Lessor will also promptly send Golden Key copies of any
     correspondence from Bank of New Hampshire relative to its mortgage. It is also agreed
     that no additional mortgages or attachments will be placed on the property without written
     permission from both parties.

9.   Golden Key will keep Management Insurance in effect on the property.

10.  Golden Key will cooperate with 40 Nashua Street LLC regarding any year end reports, up-
     dates, etc. that Bank of New Hampshire may require. Both parties also agree to cooperate
     in making any claims with insurance companies. Insurance proceeds from fire or other
     casualty will be used to repair the building.

11.  At the end of the lease Lessor (40 Nashua Street LLC) agrees to reimburse Golden Key
     for any major repairs paid for by Golden Key during the lease term only if Golden Key
     does not purchase the property and has received written permission for the repairs and
     estimated costs from 40 Nashua Street. Major repairs are those repairs or replacements
     other than repair or maintenance items. If an item can not be expensed as a repair or
     maintenance item on Lessor's tax return then it is assumed that it is a major repair.

12.  During the term of the lease Golden Key will have exclusive management of the property
     and shall be treated as the sole owner of the property except for Lessor's obligations to
     pay the Bank of New Hampshire principal, interest, taxes and insurance and to provide
     Golden Key with copies of correspondence from Bank of New Hampshire, insurance
     company and the Town related to the property. All matters concerning management and

-2-

operation of the building shall be Golden Key's sole responsibility. Without limiting this general statement, Golden Key shall have sole responsibility:

> setting rents;
> entering into leases (provided that no lease may extend beyond February 9, 2008);
> signing and serving demands for rent and notices to quit;
> appearing as the owner in any landlord-tenant writ; and
> all routine cleaning and maintenance.

Lessor shall refer any inquiries concerning all matters to Golden Key.

Lessor will sign the attached authorization for landlord-tenant purposes and any other authorizations which may be required by the courts to prosecute landlord-tenant matters.

13. It is agreed that permission will be given to drywall the hallways to meet fire codes, replace fuses with circuit breakers, and to bring the windows next to the fire escape to code. Golden Key will inform Lessor of the actual costs of these projects before undertaking them.

14. Golden Key will be entitled to all money collected for the operation of the property.

15. All building maintenance will be the sole responsibility of Golden Key.

16. All dealings with the Town of Milford will be with Golden Key.

17. Golden Key will keep 40 Nashua Street informed of any town issues.

18. All current residential tenants are on a week to week basis. Both commercial tenants are on a month to month basis. Copies of any leases will be delivered to Golden Key.

> The attached rent role states the name of the tenants, whether or not there is a lease, the amount of rent and whether or not there is a security deposit.

19. Golden Key will start collecting rent the first Saturday after the signing of the lease. Any back rents due to 40 Nashua Street are not the concern of and will not be collected by Golden Key.

20. Water, sewer, oil and propane will be prorated as of closing. Golden Key will open a new PSNH account at time of lease signing.

-3-

21. If Golden Key falls two months behind in lease payments 40 Nashua Street can cancel this lease and take back control of the building.

22. This is the complete agreement of the parties.

Dated this _9_ day of February, 2005.

_____
Witness

_____
40 Nashua Street LLC
By Its Manager, Sheila M. Barnett
Member duly authorized to act on behalf
of and bind the LLC

State of New Hampshire
County of Hillsborough

The foregoing instrument was acknowledged before me this _9_ day of February, 2005 by Sheila M. Barnett, Manager of 40 Nashua Street LLC.

_____
Justice of the Peace
Notary Public

AMANDA J. CHENEY
NOTARY PUBLIC
My Commission Expires Nov. 13, 2007

_____
Witness

_____
Golden Key Management LLC
By Its Manager, Dorothy Chapman
Member duly authorized to act on behalf
of and bind the LLC

State of New Hampshire
County of Hilleborough

The foregoing instrument was acknowledged before me this _8_ day of February, 2005 by Dorothy Chapman, Manager of Golden Key Management LLC.

_____
Justice of the Peace
Notary Public

AMANDA J. CHENEY
NOTARY PUBLIC
My Commission Expires Nov. 13, 2007

-4-

EXHIBIT 2

**OFFICIAL CHECK** 724146046 489557891

BANK OF NEW HAMPSHIRE

*A division of Banknorth, N.A.*

SOURCE OF FUNDS   ☐ CASH   ☐ ACCT/GL NO.

PAY TO THE ORDER OF ***Dorothy Chapman***

REMITTER

***********25,000*DOLLARS*AND*00*CENTS*

**NON NEGOTIABLE**

CUSTOMER COPY

AUTHORIZED SIGNATURE

DRAWER: BANKNORTH, N.A.

Issued by Integrated Payment Systems Inc., Englewood, Colorado

## ASSIGNMENT OF LLC INTEREST

FOR CONSIDERATION PAID, I, **Dorothy Chapman**, hereby assign my membership

interest in **Golden Key Management LLC**, dated February 25, 2004, to _____

_____

Dated: May ____, 2005                                  _____
                                                       Dorothy Chapman

**STATE OF NEW HAMPSHIRE**
Hillsborough, ss.

    Personally appeared the above-named Dorothy Chapman and acknowledged the
foregoing instrument to be her free and voluntary act and deed.

    Before me, this ____ day of May, 2005.

                                                       _____
                                                       Notary Public/Justice of the Peace



*Recieved $25,000 in compensation D.(h)*

EXHIBIT 3

ASSIGNMENT OF LEASE WITH OPTION TO PURCHASE

AGREEMENT, dated this 24th day of April 2006, by and between MAK Investments, LLC, a New Hampshire limited liability company with a mailing address of 270 South Main Street, Manchester, County of Hillsborough, State of New Hampshire, (hereinafter referred to as Assignor) and John Lacapo, with a mailing address of 12-16 Hovey Street, Dracut, County of Middlesex, Commonwealth of Massachusetts, (hereinafter referred to as Assignee). Assignor, for good and valuable consideration received, does hereby assign to Assignee, all of his right and interest in a certain lease with option to purchase the following described premises:

A property located at 40 Nashua Street, Milford, County of Hillsborough, State of New Hampshire, being the same property conveyed by Nancy Fraser to 40 Nashua Street, LLC by deed dated August 31, 2000, and recorded in the Hillsborough County Registry of Deeds in Book 6285, Page 395.

By signing this agreement, all parties acknowledge and agree that they will be bound by the following terms and conditions:

1.  Assignee agrees to pay to the Assignor the sum of Four Hundred Fifty Thousand ($450,000.00) Dollars, to be paid in the following manner:
    a.  One payment by cash or check in the amount of Three Hundred Thousand ($300,000.00) Dollars, payable to the order of Assignor, on or before April 24, 2006;  Both parties acknowledge that this payment is, in part, intended to reimburse the Assignor for funds expensed during the renovations of the subject property.  As such, both parties acknowledge that this payment is non-refundable.

    b.  A second mortgage naming Assignor as mortgagee in the amount of One Hundred Twenty Five Thousand ($125,000.00) Dollars to be secured by the property located at 12-16 Hovey Street, Dracut, Massachusetts.  Interest will accrue on this mortgage at the rate of Eight percent (8%) per annum.  No monthly payments will be due for the duration of this mortgage.  Assignee agrees that the full balance of the mortgage plus any and all accrued interest will become due in full on January 1, 2008.

    c.  The remaining balance of Twenty Five Thousand ($25,000.00) Dollars will be paid in the form of labor to be performed by the Assignee, in favor of the Assignor, at such times and at such places as the Assignor may designate.  Assignee agrees that any labor performed which is intended to be deducted from this debt, shall be invoiced at regular

intervals, and shall state with specificity the time, place and extent of any and all work performed.  In the event that the full Twenty Five Thousand ($25,000.00) Dollars is not invoiced and/or accounted for by January 1, 2008, Assignee shall pay to Assignor the full balance remaining, TIME BEING OF THE ESSENCE.

d.  Assignor further agrees to disburse such funds as may be necessary, from time to time, to assist Assignee in the management of the property.  Assignee acknowledges that any funds disbursed for these purposes will be at the sole discretion of the Assignor, and any requests for such funds must first be approved by the Assignor.  These funds are to be repaid in the form of labor under the terms stated above.  If any such funds remain unpaid as of January 1, 2008, Assignee shall pay Assignor the balance of all funds advanced.

2.  Assignee acknowledges that the above referenced payments are intended to be reimbursements for expenses incurred by the Assignor in attempting to renovate and exercise his option to purchase the subject property.  By signing this agreement, Assignee acknowledges that he is accepting all of Assignors rights with regard to this lease with option to purchase, as well as all of Assignor's duties, the terms of which are as follows:

   a.  Assignee will lease, from 40 Nashua Street, LLC, (hereinafter referred to as Lessor) as a whole property, the real estate located at 40 Nashua Street, Milford, NH, which contains 8 residential units, and two commercial units.

   b.  The monthly lease payment, calculated on triple net rental basis, will be Three Thousand Four Hundred Sixty Three ($3,463.00) Dollars.  This payment includes principal, interest, taxes and insurance.  Assignee is also responsible for all utilities, including, but not limited to, water & sewer, and fire alarm fees.  If payment is not made by the 15th of each month, a $200.00 late fee will be assessed.

   c.  The monthly lease payment is subject to change, depending upon increases or decreases in taxes and insurance.

   d.  The effective date of this lease is February 10, 2005, and it shall remain in effect until February 9, 2008.

   e.  Assignee, or its heirs and assigns, shall have the option to purchase the property at any time during the lease period.  The purchase price will be Five Hundred Thousand ($500,000.00) Dollars, plus the balance of the existing mortgage with Bank of New Hampshire (Account #9380127716-09422180-000-99).  This balance is approximately Two Hundred Twenty Five Thousand ($225,000.00) Dollars, and will decrease in accordance with the existing amortization schedules.

   f.  Assignee shall give Lessor a minimum of Two (2) months notice of its intent to exercise the option to purchase.

g.  Lessor agrees to keep all mortgage, tax, and insurance payments current.  Lessor will provide Assignee with copies of its most recent mortgage statements every six months.  Assignee may request copies of Lessor's mortgage statements at any time, at Assignees cost.  Lessor agrees to send any correspondence form Bank of New Hampshire, relative to the mortgage, to Assignee.  Lessor further agrees that no additional mortgages or attachments will be placed on the property without first obtaining written consent from Assignee.

h.  Assignee shall keep management insurance in effect.

i.  Assignee will cooperate with Lessor regarding any year end reports that may be required.  Both parties also agree to cooperate in making any claims with insurance companies.  Any insurance proceeds from fire or other damage are to be used to repair the property.

j.  At the expiration of this lease, Lessor agrees to reimburse Assignee for any major repairs paid for by the Assignee during the term of the lease, provided that the Assignee does not purchase the property and has received written permission for the repairs and estimated costs from Lessor.  Major repairs are those repairs or replacements other than ordinary repair or maintenance items.  If an item can not be expensed as a repair or maintenance item on Lessor's tax return, then it is assumed it is a major repair.

k.  During the term of the lease, Assignee will have exclusive management of the property and shall be treated as the sole owner of the property except for Lessor's obligations to pay the Bank of New Hampshire principal, interest, taxes and insurance and to provide Assignee with copies of correspondence from Bank of New Hampshire, insurance company, and the Town related to the property.  All matters concerning management and operation of the building shall be Assignee's sole responsibility.  Without limiting this general statement, Assignee shall have sole responsibility in the following: setting rents, entering into leases (provided that no lease may extend beyond February 9, 2008), signing and serving demands for rent and notices to quit, appearing as the owner in any landlord-tenant writ, and all routine cleaning and maintenance. Lessor shall refer any inquiries concerning all matters to Assignee.

l.  Assignee is entitled to collect all money from the operation of the property.

m.  All dealings with the Town of Milford shall be the responsibility of Assignee, provided that Assignee shall keep Lessor informed of any Town issues.

n.  In the event that Assignee should fall two months behind in lease payments to Lessor, Lessor has the right to cancel this lease and take control of the building.

3.  Assignee acknowledges and understands the terms of the lease as stated above.  Assignee agrees to accept these terms, and by accepting this

assignment, Assignee agrees that Assignor will no longer have any liability or duties under this lease agreement.  Assignee further agrees to indemnify, defend and hold harmless the Assignor, its agents or assigns, from and against any and all losses or expenses incurred subsequent to the signing of this agreement, or against any demands, claims, and damages to persons or property claimed to be based upon the negligent work or performance of Assignor with regard to this property.

4.   By accepting this assignment, Assignee is accepting this lease with option to purchase and the subject property AS IS, without recourse to the Assignor.

5.  This agreement is intended to be a full and final expresiion of the agreement of the parties.

By: Brian W. Colsia   (Assignor)
For: MAK Investments, LLC


STATE OF _New Hampshire_

COUNTY OF _Hillsborough_

On this _24th_ day of _April_, 200_6_ personally appeared before me, the undersigned officer, _Amy Nadeau-Justin_ known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

Before me: _Amy Justin_
Justice of the Peace/Notary Public

By: John Lacapo    (Assignee)
_AKA. John Lacapo_

STATE OF _New Hampshire_

COUNTY OF _Hillsborough_

On this _24th_ day of _April_, 200_6_ personally appeared before me, the undersigned officer, _Amy Nadeau Justin_, known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

Before me: _Amy Justin_
Justice of the Peace/Notary Public

EXHIBIT B

Official Form 1 (4/07)

| United States Bankruptcy Court<br>District of Massachusetts | Voluntary Petition |
|---|---|

| Name of Debtor (if individual, enter Last, First, Middle):<br>**Locapo, John** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all)<br>**xxx-xx-1467** | Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all) |

| Street Address of Debtor (No. and Street, City, and State):<br>**14 Hovey Street**<br>**Dracut, MA** | ZIP Code<br>**01826** | Street Address of Joint Debtor (No. and Street, City, and State): | ZIP Code |
|---|---|---|---|

| County of Residence or of the Principal Place of Business:<br>**Middlesex** | County of Residence or of the Principal Place of Business: |
|---|---|
| Mailing Address of Debtor (if different from street address):<br><br>ZIP Code | Mailing Address of Joint Debtor (if different from street address):<br><br>ZIP Code |

Location of Principal Assets of Business Debtor
(if different from street address above):

| Type of Debtor<br>(Form of Organization)<br>(Check one box) | Nature of Business<br>(Check one box) | Chapter of Bankruptcy Code Under Which<br>the Petition is Filed (Check one box) |
|---|---|---|
| ☒ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☐ Corporation (includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☐ Other | ☒ Chapter 7<br>☐ Chapter 9<br>☐ Chapter 11<br>☐ Chapter 12<br>☐ Chapter 13<br><br>☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding |
| | Tax-Exempt Entity<br>(Check box, if applicable)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | Nature of Debts<br>(Check one box)<br>☒ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."   ☐ Debts are primarily business debts. |

| Filing Fee (Check one box) | Check one box: |
|---|---|
| ☒ Full Filing Fee attached<br><br>☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br><br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | **Chapter 11 Debtors**<br>☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).<br>Check if:<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br>Check all applicable boxes:<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| Statistical/Administrative Information | THIS SPACE IS FOR COURT USE ONLY |
|---|---|
| ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

Estimated Number of Creditors

| 1-<br>49 | 50-<br>99 | 100-<br>199 | 200-<br>999 | 1,000-<br>5,000 | 5,001-<br>10,000 | 10,001-<br>25,000 | 25,001-<br>50,000 | 50,001-<br>100,000 | OVER<br>100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

Estimated Assets

| ☐ $0 to<br>$10,000 | ☐ $10,001 to<br>$100,000 | ☒ $100,001 to<br>$1 million | ☐ $1,000,001 to<br>$100 million | ☐ More than<br>$100 million |
|---|---|---|---|---|

Estimated Liabilities

| ☐ $0 to<br>$50,000 | ☐ $50,001 to<br>$100,000 | ☒ $100,001 to<br>$1 million | ☐ $1,000,001 to<br>$100 million | ☐ More than<br>$100 million |
|---|---|---|---|---|

Official Form 1 (4/07)                                                                                                                    FORM B1, Page 2

| **Voluntary Petition** | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Locapo, John** |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) |||
|---|---|---|
| Location<br>Where Filed:  **- None -** | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) |||
|---|---|---|
| Name of Debtor:<br>**- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b). |
| ☐ Exhibit A is attached and made a part of this petition. | **X** /s/ William H. Harris                     **September 17, 2007**<br>   Signature of Attorney for Debtor(s)                     (Date)<br>   **William H. Harris 560813** |

| **Exhibit C** |
|---|
| Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?<br>   ☐ Yes, and Exhibit C is attached and made a part of this petition.<br>   ■ No. |

| **Exhibit D** |
|---|
| (To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)<br>   ■ Exhibit D completed and signed by the debtor is attached and made a part of this petition.<br>If this is a joint petition:<br>   ☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition. |

| **Information Regarding the Debtor - Venue** |
|---|
| (Check any applicable box) |
| ■   Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District. |
| ☐   There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District. |
| ☐   Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District. |

| **Statement by a Debtor Who Resides as a Tenant of Residential Property** |
|---|
| (Check all applicable boxes) |
| ☐   Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.) |
|            _____<br>           (Name of landlord that obtained judgment) |
|            _____<br>           (Address of landlord) |
| ☐   Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and |
| ☐   Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition. |

Official Form 1 (4/07)                                                                                         FORM B1, Page 3

| Voluntary Petition | Name of Debtor(s): |
|---|---|
| *(This page must be completed and filed in every case)* | **Locapo, John** |

Signatures

| **Signature(s) of Debtor(s) (Individual/Joint)** | **Signature of a Foreign Representative** |
|---|---|

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.

[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.

[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ John Locapo**
Signature of Debtor **John Locapo**

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

**September 17, 2007**
Date

**Signature of Attorney**

X **/s/ William H. Harris**
Signature of Attorney for Debtor(s)

**William H. Harris 560813**
Printed Name of Attorney for Debtor(s)

**Harris & Dial, P.C.**
Firm Name

**65 Flagship Drive**
**North Andover, MA 01845**

_____
Address

**Email: wharris@harrisdial.com**
**(978) 703-4975 Fax: (978) 777-3692**
Telephone Number

**September 17, 2007**
Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Authorized Individual

_____
Printed Name of Authorized Individual

_____
Title of Authorized Individual

_____
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social Security number (If the bankruptcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*

Form 6-Summary (10/06)

# United States Bankruptcy Court
### District of Massachusetts

In re    John Locapo                                       ,    Case No. _____

                                            Debtor             Chapter_____ 7 _____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 328,000.00 | | |
| B - Personal Property | Yes | 3 | 13,148.25 | | |
| C - Property Claimed as Exempt | Yes | 1 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 473,237.16 | |
| E - Creditors Holding Unsecured Priority Claims  (Total of Claims on Schedule E) | Yes | 3 | | 10,351.01 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 15 | | 383,058.80 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 4 | | | |
| I - Current Income of Individual Debtor(s) | Yes | 1 | | | 2,748.00 |
| J - Current Expenditures of Individual Debtor(s) | Yes | 2 | | | 5,899.23 |
| Total Number of Sheets of ALL Schedules | | 32 | | | |
| Total Assets | | | 341,148.25 | | |
| Total Liabilities | | | | 866,646.97 | |

Copyright (c) 1996-2007 - Best Case Solutions - Evanston, IL - (800) 492-8037

Official Form 6I (10/06)

In re   **John Locapo**                                     Case No. _____
                          Debtor(s)

## SCHEDULE I. CURRENT INCOME OF INDIVIDUAL DEBTOR(S)

The column labeled "Spouse" must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. Do not state the name of any minor child.

| Debtor's Marital Status: | DEPENDENTS OF DEBTOR AND SPOUSE | |
|---|---|---|
| **Single** | RELATIONSHIP(S): **None.** | AGE(S): |

| Employment: | DEBTOR | SPOUSE |
|---|---|---|
| Occupation | **Unemployed** | |
| Name of Employer | | |
| How long employed | | |
| Address of Employer | | |

INCOME: (Estimate of average or projected monthly income at time case filed)

| | | DEBTOR | | SPOUSE |
|---|---|---|---|---|
| 1. Monthly gross wages, salary, and commissions (Prorate if not paid monthly) | $ | 0.00 | $ | N/A |
| 2. Estimate monthly overtime | $ | 0.00 | $ | N/A |
| 3. SUBTOTAL | $ | 0.00 | $ | N/A |
| 4. LESS PAYROLL DEDUCTIONS | | | | |
|     a. Payroll taxes and social security | $ | 0.00 | $ | N/A |
|     b. Insurance | $ | 0.00 | $ | N/A |
|     c. Union dues | $ | 0.00 | $ | N/A |
|     d. Other (Specify): _____ | $ | 0.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 5. SUBTOTAL OF PAYROLL DEDUCTIONS | $ | 0.00 | $ | N/A |
| 6. TOTAL NET MONTHLY TAKE HOME PAY | $ | 0.00 | $ | N/A |
| 7. Regular income from operation of business or profession or farm (Attach detailed statement) | $ | 0.00 | $ | N/A |
| 8. Income from real property | $ | 0.00 | $ | N/A |
| 9. Interest and dividends | $ | 0.00 | $ | N/A |
| 10. Alimony, maintenance or support payments payable to the debtor for the debtor's use or that of dependents listed above | $ | 0.00 | $ | N/A |
| 11. Social security or government assistance (Specify): _____ | $ | 0.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 12. Pension or retirement income | $ | 0.00 | $ | N/A |
| 13. Other monthly income (Specify): **Workmen's Compensation** | $ | 2,748.00 | $ | N/A |
| | $ | 0.00 | $ | N/A |
| 14. SUBTOTAL OF LINES 7 THROUGH 13 | $ | 2,748.00 | $ | N/A |
| 15. AVERAGE MONTHLY INCOME (Add amounts shown on lines 6 and 14) | $ | 2,748.00 | $ | N/A |
| 16. COMBINED AVERAGE MONTHLY INCOME: (Combine column totals from line 15; if there is only one debtor repeat total reported on line 15) | | $ | 2,748.00 | |

(Report also on Summary of Schedules and, if applicable, on Statistical Summary of Certain Liabilities and Related Data)

17. Describe any increase or decrease in income reasonably anticipated to occur within the year following the filing of this document:

**EXHIBIT C**

Official Form 1 (4/07)

# United States Bankruptcy Court
## District of Massachusetts

**Voluntary Petition**

| Name of Debtor (if individual, enter Last, First, Middle): <br> **A Precise Maintenance, Inc.** | Name of Joint Debtor (Spouse) (Last, First, Middle): |
|---|---|
| All Other Names used by the Debtor in the last 8 years (include married, maiden, and trade names): | All Other Names used by the Joint Debtor in the last 8 years (include married, maiden, and trade names): |
| Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all) <br> **20-0476211** | Last four digits of Soc. Sec./Complete EIN or other Tax ID No. (if more than one, state all) |
| Street Address of Debtor (No. and Street, City, and State): <br> **16 Hovey Street** <br> **Dracut, MA**    ZIP Code **01826** | Street Address of Joint Debtor (No. and Street, City, and State): ZIP Code |
| County of Residence or of the Principal Place of Business: <br> **Middlesex** | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address): <br> **c/o John Locapo** <br> **14 Hovey Street** <br> **Dracut, MA**   ZIP Code **01826** | Mailing Address of Joint Debtor (if different from street address): ZIP Code |
| Location of Principal Assets of Business Debtor (if different from street address above): **16 Hovey Street** **Dracut, MA 01826** | |

**Type of Debtor** (Form of Organization) (Check one box)
- ☐ Individual (includes Joint Debtors) *See Exhibit D on page 2 of this form.*
- ☒ Corporation (includes LLC and LLP)
- ☐ Partnership
- ☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Nature of Business** (Check one box)
- ☐ Health Care Business
- ☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)
- ☐ Railroad
- ☐ Stockbroker
- ☐ Commodity Broker
- ☐ Clearing Bank
- ☒ Other

**Tax-Exempt Entity** (Check box, if applicable)
- ☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code).

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box)
- ☒ Chapter 7
- ☐ Chapter 9
- ☐ Chapter 11
- ☐ Chapter 12
- ☐ Chapter 13
- ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
- ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Nature of Debts** (Check one box)
- ☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."
- ☒ Debts are primarily business debts.

**Filing Fee** (Check one box)
- ☒ Full Filing Fee attached
- ☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.
- ☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**
Check one box:
- ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
- ☐ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
- ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.

Check all applicable boxes:
- ☐ A plan is being filed with this petition.
- ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Statistical/Administrative Information**
- ☐ Debtor estimates that funds will be available for distribution to unsecured creditors.
- ☒ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

**Estimated Number of Creditors**

| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | OVER 100,000 |
|---|---|---|---|---|---|---|---|---|---|
| ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |

**Estimated Assets**

| ☐ $0 to $10,000 | ☒ $10,001 to $100,000 | ☐ $100,001 to $1 million | ☐ $1,000,001 to $100 million | ☐ More than $100 million |
|---|---|---|---|---|

**Estimated Liabilities**

| ☐ $0 to $50,000 | ☐ $50,001 to $100,000 | ☒ $100,001 to $1 million | ☐ $1,000,001 to $100 million | ☐ More than $100 million |
|---|---|---|---|---|

Official Form 1 (4/07)                                                                                    FORM B1, Page 2

| **Voluntary Petition** | Name of Debtor(s): |
| *(This page must be completed and filed in every case)* | **A Precise Maintenance, Inc.** |

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** (If more than two, attach additional sheet) | | |
|---|---|---|
| Location Where Filed: **- None -** | Case Number: | Date Filed: |
| Location Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet) | | |
|---|---|---|
| Name of Debtor: **- None -** | Case Number: | Date Filed: |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br>☐ Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I delivered to the debtor the notice required by 11 U.S.C. §342(b).<br><br>X _____<br>    Signature of Attorney for Debtor(s)      (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☒ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor - Venue**
(Check any applicable box)

☒ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Statement by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included in this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

Official Form 1 (4/07) FORM B1, Page 3

| **Voluntary Petition** *(This page must be completed and filed in every case)* | Name of Debtor(s): **A Precise Maintenance, Inc.** |

Signatures

**Signature(s) of Debtor(s) (Individual/Joint)**

I declare under penalty of perjury that the information provided in this petition is true and correct.
[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.
[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. §342(b).

I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X _____
Signature of Debtor

X _____
Signature of Joint Debtor

_____
Telephone Number (If not represented by attorney)

_____
Date

**Signature of Attorney**

X **/s/ William H. Harris**
Signature of Attorney for Debtor(s)

**William H. Harris  560813**
Printed Name of Attorney for Debtor(s)

**Harris & Dial, P.C.**
Firm Name

**65 Flagship Drive**
**North Andover, MA 01845**

_____
Address

**Email: wharris@harrisdial.com**
**(978) 703-4975  Fax: (978) 777-3692**
Telephone Number

**November 28, 2007**
Date

**Signature of Debtor (Corporation/Partnership)**

I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

X **/s/ John Locapo**
Signature of Authorized Individual

**John Locapo**
Printed Name of Authorized Individual

**President**
Title of Authorized Individual

**November 28, 2007**
Date

**Signature of a Foreign Representative**

I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐ I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. §1515 are attached.

☐ Pursuant to 11 U.S.C. §1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.

X _____
Signature of Foreign Representative

_____
Printed Name of Foreign Representative

_____
Date

**Signature of Non-Attorney Bankruptcy Petition Preparer**

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

_____
Social Security number (If the bankrutpcy petition preparer is not an individual, state the Social Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.)(Required by 11 U.S.C. § 110.)

_____
Address

X _____

_____
Date

Signature of Bankruptcy Petition Preparer or officer, principal, responsible person,or partner whose Social Security number is provided above.

Names and Social Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both 11 U.S.C. §110; 18 U.S.C. §156.*