Form 6-Summary (10/06)

# United States Bankruptcy Court
## District of Massachusetts

In re    **A Precise Maintenance, Inc.**                         Case No. _____

                                      Debtor             Chapter _____ 7 _____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each.  Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided.  Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts of all claims from Schedules D, E, and F to determine the total amount of the debtor's liabilities. Individual debtors must also complete the "Statistical Summary of Certain Liabilities and Related Data" if they file a case under chapter 7, 11, or 13.

| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
|---|---|---|---|---|---|
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 3 | 14,075.00 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 25,398.15 | |
| E - Creditors Holding Unsecured Priority Claims (Total of Claims on Schedule E) | Yes | 2 | | 1,342.37 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 9 | | 154,467.14 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 18 | | | |
| Total Assets | | | 14,075.00 | | |
| Total Liabilities | | | | 181,207.66 | |

Official Form 7
(04/07)

# United States Bankruptcy Court
## District of Massachusetts

In re   **A Precise Maintenance, Inc.**                                                   Case No. _____

_____   Chapter   **7**   _____
                                    Debtor(s)

# STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs. Do not include the name or address of a minor child in this statement. Indicate payments, transfers and the like to minor children by stating "a minor child." See 11 U.S.C. § 112; Fed. R. Bankr. P. 1007(m).

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known), and the number of the question.

*DEFINITIONS*

*"In business."* A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed full-time or part-time. An individual debtor also may be "in business" for the purpose of this form if the debtor engages in a trade, business, or other activity, other than as an employee, to supplement income from the debtor's primary employment.

*"Insider."* The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

**1. Income from employment or operation of business**

None
☐      State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business, including part-time activities either as an employee or in independent trade or business, from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the **two years** immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|---|---|
| **$642,943.27** | **Operation of Business - 2007** |
| **$1,012,026.49** | **Operation of Business - 2006** |
| **$684,414.87** | **Operation of Business - 2005** |

**2. Income other than from employment or operation of business**

None
■      State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the **two years** immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

AMOUNT                          SOURCE

2

**3. Payments to creditors**

None
■   *Complete a. or b., as appropriate, and c.*

a.   *Individual or joint debtor(s) with primarily consumer debts.*  List all payments on loans, installment purchases of goods or services, and other debts to any creditor made within **90 days** immediately preceding the commencement of this case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $600. Indicate with an (*) any payments that were made to a creditor on account of a domestic support obligation or as part of an alternative repayment schedule under a plan by an approved nonprofit budgeting and creditor counseling agency. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
| --- | --- | --- | --- |

None
■   b.   *Debtor whose debts are not primarily consumer debts:* List each payment or other transfer to any creditor made within **90 days** immediately preceding the commencement of the case if the aggregate value of all property that constitutes or is affected by such transfer is not less than $5,475.  (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS/ TRANSFERS | AMOUNT PAID OR VALUE OF TRANSFERS | AMOUNT STILL OWING |
| --- | --- | --- | --- |

None
■   c.   *All debtors:* List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
| --- | --- | --- | --- |

**4.   Suits and administrative proceedings, executions, garnishments and attachments**

None
■   a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
| --- | --- | --- | --- |

None
■   b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |

**5.   Repossessions, foreclosures and returns**

None
☐   List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
| --- | --- | --- |
| **Eastern Bank**<br>**One Eastern Place**<br>**195 Market Street**<br>**Lynn, MA 01901-1508** | **7/07** | **2005 Chevrolet 2500 - $20,000** |

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Caterpillar Financial Svs.** **P.O. Box 13834** **Newark, NJ 07188-0834** | **08/07** | **Skid Steer** |

#### 6. Assignments and receiverships

None ■   a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■   b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

#### 7. Gifts

None ■   List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

#### 8. Losses

None ■   List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

#### 9. Payments related to debt counseling or bankruptcy

None ☐   List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|
| **Harris & Dial, P.C.** **65 Flagship Drive** **Suite C** **North Andover, MA 01845** | | **See Statement Pursuant to Rule 2016(b).** |

4

**10. Other transfers**

None ☑ a. List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **two years** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

None ☑ b. List all property transferred by the debtor within **ten years** immediately preceding the commencement of this case to a self-settled trust or similar device of which the debtor is a beneficiary.

| NAME OF TRUST OR OTHER DEVICE | DATE(S) OF TRANSFER(S) | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY OR DEBTOR'S INTEREST IN PROPERTY |
|---|---|---|

**11. Closed financial accounts**

None ☐ List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|
| **Enterprise Bank**<br>**Lakeview Avenue**<br>**Dracut, MA 01826** | **Checking - 9449 - $0.00** | **$0.00 - 07/10/07** |

**12. Safe deposit boxes**

None ☑ List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

**13. Setoffs**

None ☑ List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

**14. Property held for another person**

None ☑ List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

5

**15. Prior address of debtor**

None ■

If the debtor has moved within **three years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

ADDRESS                                    NAME USED                                    DATES OF OCCUPANCY

**16. Spouses and Former Spouses**

None ■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within **eight years** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

**17. Environmental Information.**

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None ■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW

None ■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW

None ■

c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION

6

**18 . Nature, location and name of business**

None
■
   a. *If the debtor is an individual*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partner in a partnership, sole proprietor, or was self-employed in a trade, profession, or other activity either full- or part-time within **six years** immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

   *If the debtor is a partnership*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within **six years** immediately preceding the commencement of this case.

   *If the debtor is a corporation*, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within **six years** immediately preceding the commencement of this case.

| NAME | LAST FOUR DIGITS OF SOC. SEC. NO./ COMPLETE EIN OR OTHER TAXPAYER I.D. NO. | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|

None
■
   b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|---|---|

   The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within **six years** immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership, a sole proprietor or self-employed in a trade, profession, or other activity, either full- or part-time.

   *(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

**19. Books, records and financial statements**

None
☐
   a. List all bookkeepers and accountants who within **two years** immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

NAME AND ADDRESS

**St. Armands Financial & Tax Services**
**1470 Lakeview Avenue**
**Dracut, MA 01826**

DATES SERVICES RENDERED
**2002 - 6/07**

None
■
   b. List all firms or individuals who within the **two years** immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|---|---|---|

None
■
   c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|---|---|

None
☐
   d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued by the debtor within **two years** immediately preceding the commencement of this case.

NAME AND ADDRESS
**EFTS**

DATE ISSUED
**2/07**

7

**20. Inventories**

None
■

a. List the dates of the last two inventories taken of your property, the name of the person who supervised the taking of each inventory, and the dollar amount and basis of each inventory.

| DATE OF INVENTORY | INVENTORY SUPERVISOR | DOLLAR AMOUNT OF INVENTORY (Specify cost, market or other basis) |
|---|---|---|

None
■

b. List the name and address of the person having possession of the records of each of the two inventories reported in a., above.

| DATE OF INVENTORY | NAME AND ADDRESSES OF CUSTODIAN OF INVENTORY RECORDS |
|---|---|

**21 . Current Partners, Officers, Directors and Shareholders**

None
■

a. If the debtor is a partnership, list the nature and percentage of partnership interest of each member of the partnership.

| NAME AND ADDRESS | NATURE OF INTEREST | PERCENTAGE OF INTEREST |
|---|---|---|

None
☐

b. If the debtor is a corporation, list all officers and directors of the corporation, and each stockholder who directly or indirectly owns, controls, or holds 5 percent or more of the voting or equity securities of the corporation.

| NAME AND ADDRESS | TITLE | NATURE AND PERCENTAGE OF STOCK OWNERSHIP |
|---|---|---|
| **John Locapo**<br>**14 Hovey Street**<br>**Dracut, MA 01826** | **President** | **100 percent** |

**22 . Former partners, officers, directors and shareholders**

None
■

a. If the debtor is a partnership, list each member who withdrew from the partnership within **one year** immediately preceding the commencement of this case.

| NAME | ADDRESS | DATE OF WITHDRAWAL |
|---|---|---|

None
■

b. If the debtor is a corporation, list all officers, or directors whose relationship with the corporation terminated within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS | TITLE | DATE OF TERMINATION |
|---|---|---|

**23 . Withdrawals from a partnership or distributions by a corporation**

None
■

If the debtor is a partnership or corporation, list all withdrawals or distributions credited or given to an insider, including compensation in any form, bonuses, loans, stock redemptions, options exercised and any other perquisite during **one year** immediately preceding the commencement of this case.

| NAME & ADDRESS OF RECIPIENT, RELATIONSHIP TO DEBTOR | DATE AND PURPOSE OF WITHDRAWAL | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

**24. Tax Consolidation Group.**

None
■

If the debtor is a corporation, list the name and federal taxpayer identification number of the parent corporation of any consolidated group for tax purposes of which the debtor has been a member at any time within **six years** immediately preceding the commencement of the case.

| NAME OF PARENT CORPORATION | TAXPAYER IDENTIFICATION NUMBER (EIN) |
|---|---|

8

**25. Pension Funds.**

None   If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an
☐      employer, has been responsible for contributing at any time within **six years** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                                    TAXPAYER IDENTIFICATION NUMBER (EIN)

9

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date **November 28, 2007**          Signature  **/s/ John Locapo**
                                                **John Locapo**
                                                **President**

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

*Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571*

**EXHIBIT D**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

John Locapo

      v.                               Civil No. 08-cv-414-JL
                                         Opinion No. 2009 DNH 057

Brian Colsia *et al.*

## O R D E R

Plaintiff John Locapo, proceeding pro se, has sued MAK
Investments, LLC; its managing member, Brian Colsia; and Starter
Title Services, a title company that allegedly assisted in
placing a mortgage on Locapo's residence to finance his purchase
of a different property from MAK.[1]  Locapo claims that, in the
course of these transactions, the defendants made
misrepresentations, engaged in unfair or deceptive acts and
practices, and committed other wrongs.  The defendants have filed
motions to dismiss Locapo's complaint, see Fed. R. Civ. P.
12(b)(6), arguing that these claims did not survive his
bankruptcy filing in September 2007.

This court has diversity jurisdiction over this matter,
since Locapo is a citizen of Massachusetts and the defendants
(or, in the case of MAK, its members) are citizens of New

---

[1]While Locapo commenced this action in a pro se capacity, he
retained counsel after the defendants filed their motions to
dismiss--but counsel sought, and was granted, leave to withdraw
three months later, returning Locapo to pro se status.

Hampshire.  See 28 U.S.C. § 1332.  After oral argument, and for
the foregoing reasons, the court grants the defendants' motions.

In ruling on a motion to dismiss for failure to state a
claim under Rule 12(b)(6) of the Federal Rules of Civil
Procedure, the court proceeds "on the assumption that all the
allegations in the complaint are true (even if doubtful in
fact)."  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)
(citations and footnote omitted).  Furthermore, Locapo's pro se
complaint must be "liberally construed" and "held to less
stringent standards than formal pleadings drafted by lawyers."
Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (applying
Twombly standard to pro se complaint).  The court has also taken
judicial notice of the records of Locapo's bankruptcy proceeding.
See Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial
Mortgage Bankers Corp.), 324 F.3d 12, 16 (1st Cir. 2003).

The complaint alleges, in relevant part, that Colsia orally
agreed to sell Locapo an apartment building in Milford, New
Hampshire, and to assist him in securing the financing for the
purchase.  With Colsia's help, Locapo obtained a mortgage on his
residence, intending to use the proceeds to pay roughly half the
cost of the apartment building.[2]  Locapo claims that Starter,

---

[2]As discussed infra at note 5, the parties' written
agreement indicates that the deal had a significantly different

2

which served as the title company for the transaction,

nevertheless acted wrongfully in disbursing the proceeds to

Colsia.  The transaction closed on April 26, 2006.

Locapo alleges that, to pay the balance of the purchase

price, he granted MAK a second mortgage on his residence and

provided landscaping services and materials on another property

owned by Colsia and MAK.[3]  Locapo also claims to have spent money

making various improvements to the apartment building itself.  In

July 2007, however, Colsia allegedly told Locapo that Colsia

would not be able to assist Locapo in getting more financing and,

furthermore, that Locapo would lose both his initial investment

and the value of the improvements as a result.

Locapo, represented by counsel, subsequently filed a

voluntary petition for bankruptcy protection, on September 17,

2007.  In re Locapo, No. 07-43444 (Bkrtcy. D. Mass. Sept. 17,

2007).  Under Rule 1007 of the Federal Rules of Bankruptcy

---

structure, but the court has accepted Locapo's characterization
of it for the purpose of ruling on the motions to dismiss.

[3]A mortgage secures a debt, rather than paying the debt in
the manner Locapo alleges.  Colsia and MAK represent (in their
objection to Locapo's motion for a preliminary injunction, which
has been denied) that he gave them a promissory note which was
secured by the mortgage.  That detail has no bearing on the
motions to dismiss, however.

3

Procedure, Locapo was required to file, together with the
petition, the schedule of assets and liabilities required by
11 U.S.C. § 521(a)(1)(B)(ii).  Locapo did so, using the official
bankruptcy court form.  But the filing made no reference to any
claim against the defendants or, indeed, any interest in the
apartment building at all; the line on the form for "contingent
and unliquidated claims of every nature" was checked "NONE."

Locapo alleges in his complaint that he did not realize he
had any claim against Colsia until October 2007.[4]  But after that
point, on November 28, 2007, Locapo successfully moved the
bankruptcy court for leave to amend the schedule to add a
"Possible Workmen's Compensation Settlement in an unknown
amount," listing that asset in the space for "contingent and
unliquidated claims."  Locapo's proposed amended schedule, like
his original one, made no reference to any claim against the
defendants.  Eventually, on April 15, 2008, the bankruptcy
trustee reported that the estate had "no nonexempt property
available for distribution to creditors."  This resulted in the
bankruptcy court's discharging Locapo and closing the case, which

_____

[4]Locapo also represents in his objection to the motions to
dismiss that he told his bankruptcy lawyer about the alleged
agreement with Colsia but that "since there had been no transfer
of property" the lawyer determined that the agreement was not an
asset that needed to be listed on the schedule.

4

occurred on May 22, 2008.  Some months later, on October 7, 2008,
Locapo commenced this action.

Section 521 of the bankruptcy code, as previously mentioned,
requires the debtor to file a schedule of assets and liabilities.
See 11 U.S.C. § 521(a)(1)(B)(ii).  Because "[t]he basic principle
of bankruptcy is to obtain a discharge from one's creditors in
return for all one's assets, except those exempt, as a result of
which creditors release their own claims and the bankrupt can
start fresh," the bankruptcy system cannot function fairly and
effectively unless the debtor scrupulously complies with this
requirement.  Payless Wholesale Distribs., Inc. v. Alberto Culver
(P.R.) Inc., 989 F.2d 570, 571 (1st Cir. 1992).  So a debtor
cannot omit a cause of action from his schedule of assets,
leaving his creditors in the dark as to a potential source of
payment for their claims, then bring the cause of action on his
own once those claims have been compromised or released in the
bankruptcy, keeping any recovery for himself.  See id.

Courts sometimes enforce this prohibition through the
doctrine of judicial estoppel, which generally prevents a party
from prevailing on one position in a legal proceeding, then
taking an inconsistent position in a subsequent case.  See id.;
see also, e.g., Stallings v. Hussmann Corp., 447 F.3d 1041, 1047
(8th Cir. 2006); Browning Mfg. v. Mims (In re Coastal Plains,

5

Inc.), 179 F.3d 197, 208 (5th Cir. 1999); Oneida Motor Freight,
Inc. v. United Jersey Bank, 848 F.2d 414, 419 (3d Cir. 1988).
But others, including the court of appeals for this circuit, have
relied on the operation of § 521 in conjunction with another
provision of the bankruptcy code, § 554, which provides for
abandonment of the property of the bankruptcy estate. Jeffrey v.
Desmond, 70 F.3d 183, 186 (1st Cir. 1995); see also, e.g., Cusano
v. Klein, 264 F.3d 936, 945-46 (9th Cir. 2001); Hutchins v. IRS,
67 F.3d 40, 43 (3d Cir. 1995); Vreugdenhill v. Navistar Int'l
Transp. Corp., 950 F.2d 524, 525-26 (8th Cir. 1991).  The
defendants' motions to dismiss invoke this second theory, so the
court need not consider judicial estoppel here.[5]

Section 554 provides, in relevant part, that "any property
scheduled under [§ 521(1)] and not otherwise administered is
abandoned to the debtor," 11 U.S.C. § 554(c), but "property of
the estate that is not abandoned under this section and that is
not administered in the case remains property of the estate," id.
§ 554(d).  Because property cannot be abandoned to the debtor
unless it has been scheduled, per subsection (c), property that
is not scheduled is not abandoned, but remains in the estate, per
subsection (d).  See, e.g., Cusano, 264 F.3d at 945-46.  The

_____

[5]The defendants' motions do, however, expressly reserve
their right to assert a judicial estoppel defense.

6

upshot is that, once a bankruptcy case closes through
administration of the estate, the debtor loses his rights in a
cause of action he had at the time he sought bankruptcy
protection but nevertheless failed to list on his schedule.  <u>See</u>,
<u>e.g.</u>, <u>Jeffrey</u>, 70 F.3d at 186.

     That is the fate of Locapo's claims against the defendants
here.  While "generally, a debtor has no duty to schedule a cause
of action that did not accrue prior to bankruptcy," <u>Cusano</u>, 264
F.3d at 947, the causes of action here accrued before Locapo
filed his bankruptcy petition.

     Indeed, Locapo states that Colsia announced, in July 2007,
that he would not help Locapo in getting further financing for
his purchase of the apartment building; Colsia's alleged failure
to provide this assistance provides part of the basis for
Locapo's claims against him here.  At the same time, according to
Locapo, Colsia also allegedly said that Locapo would lose his
initial investment in the property, i.e., the money he obtained
by mortgaging his residence; Colsia's alleged misappropriation of
those funds serves as the basis for a number of Locapo's other
claims against him.[6]  Locapo's claims against Starter Title,

---

     [6]Some of Locapo's claims against Colsia arise out of his
alleged misrepresentations that he or MAK was the owner of the
apartment building, when in fact it was owned by another entity,
40 Nashua Street, LLC.  The written agreement between Locapo and

which charge that it wrongfully directed those funds to Colsia,
likewise arose at that point, if not sooner (Locapo's complaint
suggests that he knew, when that mortgage closed in April 2006,
that its proceeds were destined for Colsia, and Locapo did not
dispute this point when Starter Title made it at oral argument).

Locapo's objection to the motions to dismiss does not
question that the claims he asserts here arose prior to his
bankruptcy filing.  While his complaint states that he did not
"realize" that Colsia had breached his claimed agreement to help
procure financing for the purchase until October 2007 (the month
after the bankruptcy filing), that conclusory statement is
contradicted by his factual allegations--which state, again, that
Colsia announced in July 2007 that he would not honor that aspect

---

MAK, however, explicitly states that MAK was assigning "its right
and interest in a certain lease" for the building--which included
an option to purchase--rather than the building itself, and
acknowledges Locapo's obligation, as assignee, to continue paying
rent.  The court may take judicial notice of that document, see
Perry v. New Eng. Bus. Serv., Inc., 347 F.3d 343, 345 n.2 (1st
Cir. 2003), which leaves no doubt that Locapo knew, by the time
he signed it at the latest, that neither Colsia nor MAK in fact
owned the building, regardless of what they may have allegedly
said beforehand.  Locapo makes no allegation or argument to the
contrary.  Incidentally, the agreement also indicates that what
Locapo calls his "initial investment" (including the proceeds
from the first mortgage, the note secured by the second mortgage,
and the landscaping work) was the consideration for acquiring the
option to purchase from the defendants; the additional financing
was needed to pay the owner of the building when the option was
exercised.

of the agreement--and is therefore disregarded in ruling on the

motions to dismiss.[7]  See Bell Atl., 127 S. Ct. at 1965.

Locapo does argue in his objection that he told his

bankruptcy attorney about the claimed agreement with Colsia, see

note 4, supra, but simply telling someone about a claim--which is

not even in fact what Locapo says he did--is not equivalent to

listing it on the debtor's schedule of assets.  In Jeffrey, in

fact, the court of appeals ruled that the debtors had lost their

claim by failing to list it on their asset schedule, despite

their allegation that they had discussed it with the trustee at

the creditors' meeting before the case closed, reasoning that the

debtors' failure to list the claim on their schedule was what

mattered.  70 F.3d at 186; see also Vreugdenhill, 950 F.2d at 526

("It is not enough that the trustee learns of the property

through other means; the property must be scheduled pursuant to

section 521(1).").

As the court of appeals held in Jeffrey, "[t]he law is

abundantly clear that the burden is on the debtors to list the

asset and/or amend their schedules, and that in order for

property to be abandoned by operation of law pursuant to 11

_____

[7]The same is true of the complaint's assertion that Locapo
did not learn about Colsia's alleged misappropriation of the
initial investment in the property until May 2008.

U.S.C. § 554(c), the debtor must formally schedule the property
pursuant to 11 U.S.C. § 521(1) before the close of the case." 70
F.3d at 186. Because Locapo did not discharge that burden in his
bankruptcy proceeding, his claims against the defendants remained
in the estate under § 554(d), rather than being returned to him
under § 554(c). He therefore can no longer maintain these claims
against the defendants. See id. To allow him to do would be
tantamount to letting him hide the claim (and any potential
recovery) from his creditors, who were never informed of its
existence during the bankruptcy proceeding--and walked away
empty-handed. See Payless Wholesale Distribs., 989 F.2d at 571.

    There is a potential solution to this problem, however.
Locapo may file a motion in the bankruptcy court, under Rule 5010
of the Federal Rules of Bankruptcy Procedure, to reopen his
bankruptcy case to schedule his claims against the defendants
under 11 U.S.C. § 350(b). See Brooks v. Beatty, 25 F.3d 1037
(table), 1994 WL 224160, at *3 (1st Cir. May 27, 1994)
(unpublished disposition). If he is allowed to do so, the
trustee will decide whether to press the claims or otherwise
dispose of them for the benefit of Locapo's creditors, or to
abandon the claims to him to pursue on his own. See id. Whether
to reopen the case, and what to do about the claims should the
case be reopened, are decisions left to the discretion of the

bankruptcy court and the trustee, respectively.  This court

expresses no opinion on those issues or the merits of the claims.

    For the foregoing reasons, the defendants' motions to

dismiss[8] are GRANTED.  Locapo's claims are dismissed without

prejudice to his attempting to reopen his bankruptcy proceedings.

The clerk of this court shall enter judgment accordingly and

close the case.

    **SO ORDERED.**

                                      _____
                                      Joseph N. Laplante
                                      United States District Judge

Dated:  April 22, 2009

cc:  John Locapo, pro se
     Joseph A. Foster, Esq.
     Kenneth D. Murphy, Esq.

---

[8]Documents no. 8 and 10.

11

**EXHIBIT E**

**John Locapo v. Colsia**
**Chapter 7 – 341 Meeting**

**Date: 10/22/07**

| Speaker | Testimony |
|---|---|
| Trustee | Mr. Locapo, would you raise your right hand?  Do you solemnly swear to tell the truth, the whole truth and nothing but the truth, so help me God. |
| Mr. Locapo | I do. |
| Trustee | Thank you.  I've got a Mass drivers license, it does appear to be the gentleman in front of me.  Also I have a copy of a W-2.  The numbers match.  Mr. Locapo did you review the bankruptcy petition before authorizing counsel to file it? |
| Mr. Locapo | Yes, I did. |
| Trustee | Is the information on the bankruptcy true, accurate and complete to the best of your knowledge and belief? |
| Mr. Locapo | Yes sir. |
| Trustee | Finally, the signatures that are on the petition are they your signatures? |
| Mr. Locapo | Yes. |
| Trustee | Counsel do you know why I don't have tax returns and pay stubs? |
| Counsel | I apologize Mr. Trustee.  My name is Ron _____. My _____ attorney Mr. Harris, Attorney Harris on a personal matter. |
| Trustee | Uh-hum. |
| Counsel | Anything that might be left out I do happen to have this as well.  Just one of the tax returns. |
| Trustee | I only need one.  I need the most recent one filed.  Is the '05 tax return the last one you filed sir? |
| Mr. Locapo | No, I filed last years. |
| Trustee | Have you provided that to your attorney? |
| Mr. Locapo | Um, I'm sure I have. |
| Trustee | Well, you're going to have to get it to me.  And ah, where are your pay stubs?  Have you supplied your counsel with pay stubs as well? |
| Mr. Locapo | Yeah. |
| Trustee | I need those as well because I do not have pay stubs.  I do not have tax returns.  I'm gonna conduct this meeting but I'm also gonna continue to my next rotation so that I have an opportunity to review those tax returns and pay stubs. |
| Mr. Lopapo | Okay. |
| Trustee | And the next time is December 2.  Same time is was scheduled for this |

| Speaker | Testimony |
|---|---|
| | morning.  And ah, assuming the information on that's consistent with what's on the petition, it will be a short meeting.  Alright? |
| Mr. Locapo | Okay. |
| Trustee | But you will have to come back. |
| Mr. Locapo | Okay. |
| Trustee | And make sure you get those tax returns to me within a week, because if you don't, Mr. Harris will find a Motion to Dismiss on his desk.  Thank you.  Do you still live at 14 Hovey Street in Dracut? |
| Mr. Locapo | Yes sir. |
| Trustee | How long have you lived there? |
| Mr. Locapo | About 10 years. |
| Trustee | And you own that property? |
| Mr. Locapo | Yes sir. |
| Trustee | It's worth $328,000 but you have $400 and some odd thousand in loans against it? |
| Mr. Locapo | Yes. |
| Trustee | Are you letting that property go? |
| Mr. Locapo | No sir. |
| Trustee | Are you gonna pay ah, why are you gonna pay $400 and some odd thousand for property that's worth a little over three? |
| Mr. Locapo | I'm just trying to hold on to it, it's the only residence I have. |
| Trustee | You've got a first mortgage of $308,000 and a second of $139,000.  When did you get the second, last year? |
| Mr. Locapo | Yes. |
| Trustee | Did you get them both at the same time? |
| Mr. Locapo | Yes. |
| Trustee | And did you receive any cash in May of last year when you took out the second mortgage? |
| Mr. Locapo | No. |
| Trustee | It all went to pay existing debt. |
| Mr. Locapo | Yup. |
| Trustee | Was any of that debt money that's owed to family members? |
| Mr. Locapo | No. |
| Trustee | The property on Hovey Street is the only real estate that you've owned in the |

| Speaker | Testimony |
|---------|-----------|
| | last six years? |
| Mr. Locapo | Yes sir. |
| Trustee | Do you own any collections, stamp, coin, art, baseball cards anything? |
| Mr. Locapo | No sir. |
| Trustee | Do you own any stocks, bonds or interest in any kind of business? |
| Mr. Locapo | No sir. |
| Trustee | Anybody owe you money? |
| Mr. Locapo | No. |
| Trustee | Do you believe you may have a claim against any one for any reason, whether you've actually filed a lawsuit or not? |
| Mr. Locapo | No. |
| Trustee | Do you own a 2005 Chevy Silverado? |
| Mr. Locapo | Yes sir. |
| Trustee | Is that the only vehicle you own? |
| Mr. Locapo | Yes sir. |
| Trustee | Other than the Silverado and your residence, do you own any single asset that might be worth more than $1,000? |
| Mr. Locapo | No sir. |
| Trustee | Have you transferred either cash or property to a family member in the last year as a small holiday or birthday gifts? |
| Mr. Locapo | No sir. |
| Trustee | Made one or more payments to a single creditor in the three months before you filed your bankruptcy that totaled over $600 other than your regular monthly mortgage payments? |
| Mr. Locapo | No sir. |
| Trustee | And your on Workers' Comp still? |
| Mr. Locapo | Yes. |
| Trustee | Okay.  That may be why I don't have pay stubs.  I need the tax returns of course.  Um, your income of $2,700 right now is all of $500 over and above your mortgage payment or payments plural.  How are you um, and its less than your mortgage plus your car payments, how are you making ends meet? |
| Mr. Locapo | I have a live-in fiancee, she helps me pay the bills. |
| Trustee | Folks if you need to talk would you go outside please.  Counsel I need the um, statement the means test calculation done that requires that all income from any source that is received on a regular basis be included in question No. 8, |

| Speaker | Testimony |
|---|---|
| | and I'll quote what is says here: "Any amounts paid by another person or entity on a regular basis, the household expenses of the debtor are the debtors dependants. Alright, I need to have that information. How much does your financee contribute or your girlfriend? |
| Mr. Locapo | About $600 a month. |
| Trustee | And do you know what she earns on a monthly basis, take home? |
| Mr. Locapo | No, no. |
| Trustee | She doesn't share that with you? |
| Mr. Locapo | She's a hair dresser so its up and down. |
| Trustee | Okay. Any creditors wish to question Mr. Locapo? Meanwhile the Trustee will continue. Keep in mind you are under oath. Counsel is going to show you Schedules A&B. Schedule A requires you list all interest and real estate. Schedule B requires you to list all other assets of any kind. I want you to review both schedules and tell me if this is a complete list of everything you own when you filed your bankruptcy. If its not, you are required to tell me now. |
| Mr. Locapo | Yes sir, it's fine. |
| Trustee | Okay. This matter is continued to December 2, same time as it was schedule for today which was 10:30. If you do not get me the tax return within the week, I will be filing a Motion to Dismiss under whatever the section is a mandatory dismissal for failure to provide tax returns within a certain period of time after the filing of bankruptcy. You got that? |
| Mr. Locapo | Absolutely. |
| Trustee | Thank you – you're excused. |
| Mr. Locapo | Thank you sir. |
| Trustee | We'll see you on the 2nd. |
| Mr. Locapo | Okay. |

**Date: Continued (04/14/08)**

| Speaker | Testimony |
|---|---|
| Trustee | This is a 341 meeting of John Locapo.  Mr. Locapo is present and has provided a Mass driver's license and does appear to be the gentleman in front of me. This is a continued 341 meeting.  Mr. Locapo had not supplied tax returns and pay stubs in a timely fashion.  We did ultimately receive them and after Motion to Dismiss which Mr. Locapo did appear.  He indicated he would appear here and I did receive the tax returns, and I reviewed them and the information on those tax returns appears to be consistent with what was on the bankruptcy petition.  Mr. Locapo if you had come here the first time when it was continued, you would have been out of bankruptcy a long time ago.  I'm gonna hand those back to counsel and I'm also gonna give you a No Distribution Report.  I have no further questions. |
| Man 2 | Thank you very much Dave. |
| Mr. Locapo | Thank you. |
| Man 2 | Sorry for all the delays. |
| Trustee | Thank you. |

EXHIBIT F

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(WESTERN DIVISION)

In re                          )
                               )
                               )
JOHN LOCAPO,                   )
                               )
        Debtor                 )   Case NO.: 07-43444
                               )   Chapter 7

## DEBTOR'S PETITION TO REOPEN BANKRUPTCY

John Locapo hereby moves this court for an order reopening
the above referenced bankruptcy case pursuant to 11 U.S.C.
§350(b) and Bankruptcy Rule 5010 in order to rectify facts not
disclosed in debtor's original Voluntary Bankruptcy Petition.

1.  The Debtor filed a voluntary bankruptcy petition under
    Chapter 7 on September 17, 2007.

2.  The Debtor received a discharge on May 8, 2008.

3.  The bankruptcy case was closed on May 25, 2008.

4.  The movant seeks to request the Bankruptcy trustee to
    become a third party intervener and join debtor, John
    Locapo's civil suit against Brian Colsia and MAK
    Investments, LLC filed in the United States District Court,
    For the District of New Hampshire, Civil Action No. 08-cv-
    414-JL.

## STATEMENT OF GROUNDS FOR REOPENING THE CASE

1.   Debtor's Original Schedule F, lists MAK Investments, LLC, as a Creditor Holding an Unsecured Nonpriority Claim for an unknown amount on foreclosed property;

2.   Debtor, in good faith sat down, at a meeting with his attorney, William Harris and Brian Colsia and explained the status, as he believed it to be, of his interest in the property located at 40 Nashua Street, Milford, NH. See Debtor's Exhibit "A", Affidavit of William H Harris;

3.   Brian Colsia had sent Debtor a fraudulent letter of foreclosure stating that MAK Investments, LLC had foreclosed on the Nashua Street Property;

4.   Unbeknownst to debtor at that time neither MAK Investments, LLC nor Brian Colsia ever held a mortgage against 40 Nashua Street in Milford, NH naming Debtor, John Locapo as the mortgagee.

5.   In fact, debtor had a verbal agreement with MAK Investments, LLC and Brian Colsia to purchase the unit at 40 Nashua Street and that agreement should have been listed as an asset in Debtor's Voluntary Bankruptcy Petition;

6.   The only mortgage held by MAK Investments, LLC naming John Locapo as the mortgagee was a second mortgage held against John Locapo's home and residence that was disclosed in his Bankruptcy Petition;

PETITION TO REOPEN BANKRUPTCY                          PAGE 2 of 4

Case 1:08-cv-00414-JL    umen  3    File  1   .    Page 13 o  2

# AFFIDAVIT of TRUTH

***In the State of Massachusetts***

***County of Essex***

Re: Locapo v. Colsia et al case number: 1:08 – cv - 414

The Undersigned Affiant, William H. Harris, Esq. (BBO 560813), formerly practicing law at Harris & Dial, P.C., 65 Flagship Drive, North Andover, MA 01845 hereinafter "Affiant" does solemnly swear, declares and state as follows:

1. Affiant is competent to state to the matters set forth herein.
2. Affiant has personal knowledge of the facts stated herein.
3. All the facts stated herein are true, correct, and complete, admissible as evidence, and if called upon as a witness, Affiant will testify to their veracity.

Comes now, the Affiant under oath and penalty of perjury, who does solemnly affirm that the statements herein are true and correct in substance and in fact, and if called upon to testify would testify to their truth and veracity, to wit:

That I have known John Locapo since on or about July 7th, 2007.

That I am the bankruptcy attorney that filed a chapter 7 bankruptcy on behalf of Mr. John Locapo the case was filed on September 17, 2007, Case #0743444JBR.

That the bankruptcy case was closed on May 22, 2008.

I first met John Locapo on or about July 7th 2007 when he came to my office to file for Chapter 7 Bankruptcy.  Mr. Locapo was given a questionnaire form to complete and scheduled a subsequent meeting to review the answers to the questionnaire to prepare his bankruptcy filing.   In a subsequent meeting during the preparation of his bankruptcy schedules, John Locapo came into my office accompanied by Mr. Brian Colsia.  During this meeting, John Locapo told me he had previously purchased a ten unit apartment building located at 40 Nashua Street Milford NH.  Mr. Locapo went on to tell me that Mr. Colsia's company MAK Investments, LLC held a mortgage on this property and had foreclosed that mortgage. Accordingly, MAK Investments, LLC has scheduled as an unsecured creditor for any possible deficiency claim following this foreclosure sale.  Mr. Colsia confirmed Mr. Locapo's understanding that he had in fact foreclosed the mortgage on this property.  Mr. Colsia went on to say that he was still working with Mr. Locapo to allow him to reacquire title to the property in the future.  It appeared to me that Mr. Locapo and Mr. Colsia had a close working relationship at the time.  In fact Mr. Locapo was of the belief that the foreclosure sale of the Milford, NH property had been done to "protect" him.

The property at 40 Nashua Street, Milford NH was not scheduled as an asset in Mr. Locapo's bankruptcy case due to the above representations of Mr. Locapo and Mr. Colsia that the title was not in Mr. Locapo's name as of the bankruptcy filing.

**EXHIBIT "A"**

**PAGE 1 OF 2**

*William H Harris* (signature)

William H Harris

Dated: on the 26th day of _December_ , Two Thousand Eight

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### ACKNOWLEDGEMENT OF NOTARY

**State of Massachusetts**          *For verification purposes only*
**County of Essex**

On the 26th day of _December_ , Two Thousand Eight, before me,

_Beverly H. Nugent_          , a Notary

**Name, Title of Officer of Notary Public**

*Personally appeared, William H Harris personally known to me (or proved to me on the basis of satisfactory evidence of identification) to be a person whose name is subscribed to the within instrument(s) and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person or the entity upon behalf of which the person acted, executed that instrument.*

Witnessed, my hand and official seal.

_Beverly H Nugent_ (signature)                    seal

My Commission Expires: _____

---

## EXHIBIT "A"
## PAGE 2 OF 2

7.  After John Locapo's Bankruptcy Estate was closed he filed a civil suit against Brian Colsia and MAK Investments, LLC in the United States District Court, For the District of New Hampshire, Civil Action No. 08-cv-414-JL. See Debtor's Exhibit "B", Complaint,

8.  John Locapo's Complaint makes multiple allegations against the Defendant's including but not limited to Fraud, Breach of Fiduciary Duty and Breach of Contract;

9.  After filing the Complaint and upon further review John Locapo realized there was a discrepancy in the amount of damages requested as relief and has submitted an Amended Complaint correcting this discrepancy. See Debtor's Exhibit "C", Amended Complaint;

10. During the course of the litigation, Defendant's Brian Colsia and MAK Investments, LLC claimed that John Locapo is not the real party in interest to any claim made on behalf of debtor's estate;

11. John Locapo now realizes that the trustee of the Bankruptcy Estate is the real party in interest to this Complaint;

12. Brian Colsia breached his fiduciary duty to John Locapo when he failed to behave in a selfless fashion after putting himself in a position of influence and trust over John Locapo;

PETITION TO REOPEN BANKRUPTCY                                    PAGE 3 of 4

13. Brian Colsia is well versed in the world of commerce and John Locapo being the least sophisticated consumer, trusted Brian Colsia to act in Plaintiff's best interests throughout this process;

14. Brian Colsia's actions created a fiduciary relationship between himself and John Locapo;

15. John Locapo would ask that this court to become a third party intervener as the real party in interest and join him in the Civil Suit he has filed against Brian Colsia and MAK Investments, LLC.

_____
John Locapo

PETITION TO REOPEN BANKRUPTCY                    PAGE 4 of 4

**EXHIBIT G**

<div align="center">

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
(WESTERN DIVISION)

</div>

In re )
)
)
JOHN LOCAPO, )
)
Debtor )   Case NO.:07-43444
)   Chapter 7

<div style="writing-mode: vertical">
2009 MAY 14 P 2: 40
.: BANKRUPTCY COURT
DISTRICT OF MASS.
FILED
: : CLERK'S OFFICE
</div>

## DEBTOR'S PETITION TO REOPEN BANKRUPTCY

John Locapo hereby moves this court for an order reopening the above referenced bankruptcy case pursuant to 11 U.S.C. §350(b) and Bankruptcy Rule 5010 in order to rectify facts not disclosed in debtor's original Voluntary Bankruptcy Petition.

1.  The Debtor filed a voluntary bankruptcy petition under Chapter 7 on September 17, 2007.

2.  The Debtor received a discharge on May 8, 2008.

3.  The bankruptcy case was closed on May 25, 2008.

4.  The movant seeks to request the Bankruptcy trustee to become a third party intervener and join debtor, John Locapo's civil suit against Brian Colsia and MAK Investments, LLC filed in the United States District Court, For the District of New Hampshire, Civil Action No. 08-cv-414-JL.

<div style="writing-mode: vertical">
5/28/2009 THE BANKRUPTCY CASE IS REOPENED. THE CHAPTER 7 TRUSTEE SHALL FILE A NOTICE WITH THE COURT IF HE INTENDS TO INTERVENE OR BE SUBSTITUTED AS THE PLAINTIFF IN THE NEW HAMPSHIRE ACTION. IF NO NOTICE IS FILED WITHIN 30 DAYS, THE BANKRUPTCY CASE WILL BE CLOSED.
</div>

PETITION TO REOPEN BANKRUPTCY                    PAGE 1 of 4

**EXHIBIT H**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(WESTERN DIVISION)**

| | |
|---|---|
| In re )<br><br>)<br><br>)<br>JOHN LOCAPO, )<br><br>)<br>        Debtor )<br><br>) | **Case NO.:07-43444**<br>**Chapter 7** |

## DEBTOR'S PETITION TO REOPEN BANKRUPTCY

John Locapo hereby moves this court for an order reopening the above referenced bankruptcy case pursuant to 11 U.S.C. §350(b) and Bankruptcy Rule 5010 in order to rectify facts not disclosed in debtor's original Voluntary Bankruptcy Petition.

1.  The Debtor filed a voluntary bankruptcy petition under Chapter 7 on September 17, 2007.

2.  The Debtor received a discharge on May 8, 2008.

3.  The bankruptcy case was closed on May 25, 2008.

4.  The movant seeks to request the Bankruptcy trustee to become a third party intervener and join debtor, John Locapo's civil suit against Brian Colsia and MAK Investments, LLC filed in the United States District Court, For the District of New Hampshire, Civil Action No. 08-cv-414-JL.

### STATEMENT OF GROUNDS FOR REOPENING THE CASE

1.  Debtor's Original Schedule F, lists MAK Investments, LLC, as a Creditor Holding an Unsecured Nonpriority Claim for an unknown amount on foreclosed property;

2.  Debtor, in good faith sat down, at a meeting with his attorney, William Harris and Brian Colsia and explained the status, as he believed it to be, of his interest in the property located at 40 Nashua Street, Milford, NH. See Debtor's Exhibit "A", Affidavit of William H Harris;

3.  Brian Colsia had sent Debtor a fraudulent letter of foreclosure stating that MAK Investments, LLC had foreclosed on the Nashua Street Property;

4.  Unbeknownst to debtor at that time neither MAK Investments, LLC nor Brian Colsia ever held a mortgage against 40 Nashua Street in Milford, NH naming Debtor, John Locapo as the mortgagee.

5.  In fact, debtor had a verbal agreement with MAK Investments, LLC and Brian Colsia to purchase the unit at 40 Nashua Street and that agreement should have been listed as an asset in Debtor's Voluntary Bankruptcy Petition;

6.  The only mortgage held by MAK Investments, LLC naming John Locapo as the mortgagee was a second mortgage held against John Locapo's home and residence that was disclosed in his Bankruptcy Petition;

7.  After John Locapo's Bankruptcy Estate was closed he filed a civil suit against Brian Colsia and MAK Investments, LLC in the United States District Court, For the District of New Hampshire, Civil Action No. 08-cv-414-JL. See Debtor's Exhibit "B", Complaint,

8.  John Locapo's Complaint makes multiple allegations against the Defendant's including but not limited to Fraud, Breach of Fiduciary Duty and Breach of Contract;

9.  After filing the Complaint and upon further review John Locapo realized there was a discrepancy in the amount of damages requested as relief and has submitted an Amended Complaint correcting this discrepancy. See Debtor's Exhibit "C", Amended Complaint;

10. During the course of the litigation, Defendant's Brian Colsia and MAK Investments, LLC claimed that John Locapo is not the real party in interest to any claim made on behalf of debtor's estate;

11. John Locapo now realizes that the trustee of the Bankruptcy Estate is the real party in interest to this Complaint;

12. Brian Colsia breached his fiduciary duty to John Locapo when he failed to behave in a selfless fashion after putting himself in a position of influence and trust over John Locapo;

13. Brian Colsia is well versed in the world of commerce and John Locapo being the least sophisticated consumer, trusted Brian Colsia to act in Plaintiff's best interests throughout this process;

14. Brian Colsia's actions created a fiduciary relationship between himself and John Locapo;

15. John Locapo would ask that this court to become a third party intervener as the real party in interest and join him in the Civil Suit he has filed against Brian Colsia and MAK Investments, LLC.

John Locapo

PETITION TO REOPEN BANKRUPTCY                    PAGE 4 of 4

EXHIBIT I

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**(WESTERN DIVISION)**

| | |
|---|---|
| In re                )<br><br>JOHN LOCAPO,          )<br><br>          Debtor    )<br>                     ) | <br><br><br>Case NO.:07-43444<br>Chapter 7 |

## DEBTOR'S PETITION TO REOPEN BANKRUPTCY

John Locapo hereby moves this court for an order reopening the above referenced bankruptcy case pursuant to 11 U.S.C. §350(b) and Bankruptcy Rule 5010 in order to rectify facts not disclosed in debtor's original Voluntary Bankruptcy Petition.

1. The Debtor filed a voluntary bankruptcy petition under Chapter 7 on September 17, 2007.

2. The Debtor received a discharge on May 8, 2008.

3. The bankruptcy case was closed on May 25, 2008.

4. The movant seeks to request the Bankruptcy trustee to become a third party intervener and join debtor, John Locapo's civil suit against Brian Colsia and MAK Investments, LLC filed in the United States District Court, For the District of New Hampshire, Civil Action No. 08-cv-414-JL.

7/24/2009 DENIED. THE COURT PREVIOUSLY REOPENED THE CASE TO GIVE THE CHAPTER 7 AN OPPORTUNITY TO BECOME INVOLVED. SEE DOCUMENT #55. AS THE TRUSTEE HAS FAILED TO FILE ANYTHING WITH THE COURT, THE COURT CONCLUDES THE TRUSTEE DOES NOT WISH TO PURSUE THE ACTION.

PETITION TO REOPEN BANKRUPTCY                              PAGE 1 of 4

# STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS
NORTHERN DISTRICT

Superior Court
No. 09-C-587

## SPECIAL APPEARANCE

John Locapo

v.

Brian W. Colsia, MAK Investments, LLC, Starter Title Services,
Diane Clavelous and
TD Bank, Trustee Defendant

Returnable on the first Tuesday of  DATE

☐ COURT
☐ JURY

| APPEARANCE | WITHDRAWAL |
|---|---|
| Please enter my appearance as:<br>☒ counsel for:  Brian Colsia and<br>MAK Investments<br>270 South Main Street<br>Manchester, NH 03102<br><br>☐ Pro se | Please withdraw my appearance as:<br>☐ counsel for:<br><br>Notice of Withdrawal sent to my clients on:<br><br><br>at the following address: |

I hereby certify that
duplicates of this
notice were:

☐ delivered to:
☒ mailed

William E. Aivalikles, Esquire
60 Main St., Nashua, NH 03060

Kenneth D. Murphy, Esquire
439 Middle St., Portsmouth, NH 03801

TD Bank,      293 S. Main St., Manchester, NH 03102
**And**  1 Portland Sq., Portland, ME 04101

on  November 3, 2009

Signed  *Coleen M. Penacho*

Joseph A. Foster      NH Bar# 838
Coleen M. Penacho     NH Bar #17738
McLane, Graf, Raulerson & Middleton
 Professional Association
900 Elm St., P.O. Box 326
Manchester, NH 03105-0326
(603) 625-6464

**SPECIAL APPEARANCE**

AOC-600-245

6 .

# The State of New Hampshire

## SUPERIOR COURT

HILLSBOROUGH COUNTY
NORTHERN DISTRICT

(  ) COURT

(xx) JURY

### WRIT OF SUMMONS

John Locapo
12-16 Hovey Street
Dracut, MA  01826

v.

Brian Colsia and MAK Investments, LLC
270 S. Main St., Manchester, NH 03101

Starter Title Services
225 Derry Rd., Hudson, NH  03051

Diane Claveloux
79 Brookline Rd., Mason, NH  03048

TD Bank, Trustee Defendant
293 S. Main St., Manchester, NH  03102

The Sheriff or Deputy of any County is ordered to summon each defendant to file a written appearance with the Superior Court at the address listed below by the return day of this writ which is the first Tuesday of ___November___,
___2009___ .
YEAR                                                                                                                              MONTH

The PLAINTIFF(S) state(s):            See attached.

and the Plaintiff(s) claim(s) damages within the jurisdictional limits of this Court.

10/7/09

INDORSER (sign and print name)

DATE OF WRIT

### NOTICE TO THE DEFENDANT

The Plaintiff listed above has begun legal action against you. **You do not have to physically appear** in Court on the return day listed above since there will be no hearing on that day. However, if you intend to contest this matter, you or your attorney must file a written appearance form with the Clerk's Office by that date. (Appearance forms may be obtained from the Clerk's Office.) You will then receive notice from the Court of all proceedings concerning this case. If you fail to file an appearance by the return day, judgment will be entered against you for a sum of money which you will then be obligated to pay.

Witness, Robert J. Lynn, Chief Justice, Superior Court.

John M. Safford, Clerk
NH Superior Court Hillsborough County
Northern District
300 Chestnut St.
Manchester NH 03101-2490
(603) 669-7410
213-003-3

SIGNATURE OF PLAINTIFF/ATTORNEY

William Aivalikles
PRINTED/TYPED NAME

60 Main Street, Suite 230
ADDRESS

Nashua, NH 03060          /603-880-0303
                                    PHONE

## PARTIES

1.      The Plaintiff, John Locapo, (hereinafter referred to as "Locapo"), resides at 12-16 Hovey Street, Dracut, Massachusetts, 01826.

2.      The Defendant, Brian Colsia, (hereinafter referred to as "Colsia"), has a principal place of business at 270 South Main Street, Manchester, New Hampshire, 03101.

3.      The Defendant, MAK Investments, LLC, (hereinafter referred to as "MAK"), is a Limited Liability Corporation with a principal place of business at 270 South Main Street, Manchester, New Hampshire, 03101.

4.      The Defendant, Starter Title Services, (hereinafter referred to as "Starter"), is a company with a principal place of business at 225 Derry Road (Rte. 102), Hudson, New Hampshire, 03051.

5.      The Defendant, Diane Claveloux, (hereinafter "Claveloux"), resides at 79 Brookline Road, Mason, New Hampshire, 03048.

## STATEMENT OF FACTS

6.      Plaintiff Locapo was introduced to Defendant Colsia through a mutual friend, Michelle Paladino, (hereinafter referred to as "Paladino"), in May 2005.

7.      Locapo understood that Colsia was the owner of MAK, a real estate and hard money lending corporation.

8.      Defendant Colsia buys and sells real estate and investment properties through MAK.

1

9.    On or about November 5, 2005, Defendant Colsia offered to sell and transfer to Locapo, a certain ten unit apartment building located at 40 Nashua Street, Milford, New Hampshire, (hereinafter referred to as "property").

10.    At that time, Colsia offered to sell and transfer the building to Sawyer as "the deal of a lifetime".

11.    Colsia offered to sell the property for $1,150,000.00 (One Million One Hundred Fifty Thousand Dollars and no cents).

12.    On or about March 1, 200, Colsia entered into an oral contract with Locapo for the sale and purchase of the property.

13.    Locapo and Colsia were at the home of Paladino at the time the oral contract was entered into.

14.    The formation and acceptance of the oral contract was witnessed by Paladino.

15.    As part of the terms of the oral contract, Locapo and Colsia agreed that the first payment was to be $550,000.00 (Five Hundred Fifty Thousand Dollars and no cents) with the remaining $600,000.00 (Six Hundred Thousand Dollars and no cents) due in two (2) years.  As part of the terms of the oral contract, Colsia was to assist Plaintiff in securing the funds for the remaining $600,000.00 and assured Locapo that he could arrange the financing.  Locapo accepted this offer.

16.    As part of the terms of the oral contract, Colsia verbally agreed to "help" Locapo in obtaining the first payment and its securance.

17.    It was Colsia who chose Hampton Bay Mortgage Company, the appraisal company, and Starter and walked Locapo through the mortgage processes acting as an agent for Locapo thereby creating a fiduciary duty he owed to Plaintiff.

2

18.     Locapo, on the advice of Colsia, requested a mortgage from Hampton Bay Mortgage Company and pledge his unencumbered family home located at 12-16 Hovey Street, Dracut, Massachusetts, (hereinafter referred to as "Hovey Street"), for the purpose of securing a down payment for the purchase of the property.

19.     Elisha Talasazan, of Hampton Bay Mortgage Company, contracted an appraisal of the Hovey Street property and Michelle Paladino appraised Locapo's two family home.

20.     On April 28, 2006, a check was issued to Colsia in the amount of $299,844.97 by Hampton Bay Mortgage as payment toward the $550,000.00 first payment for the purchase of the property.

21.     The mortgage was obtained through Option One Bank with Starter Title Services as the title company.

22.     Hampton Bay Mortgage and Starter were aware that the money borrowed would be applied to the first payment of the property.

23.     Locapo allegedly signed a hand-written note directing Starter to make all checks for proceeds from the mortgage of his family's Hovey Street property be made payable directly to Colsia or MAK.

24.     The hand-written note was not notarized, has no formal letterhead, and Plaintiff's alleged signature appeared on a piece of paper.  The note is predated.

25.     Locapo does not have any recollection of signing this alleged note.

26.     Starter did not explain to Locapo that having the check written to Colsia rather than himself was unusual and not in the ordinary course of business.

27.     Starter did violate their fiduciary duty to Locapo as a result of their conduct.

3

28.     Starter was not promoting the best interest of their client, Locapo, by the direct disbursement of the proceeds to Colsia rather than other methods that would have prevented the completion of the fraud.

29.     Starter did not fully disclose the ramifications of having the funds disbursed directly to Colsia.

30.     Starter did not advise Locapo of his right to rescind and allowed the check to be negotiated on the day of the closing.

31.     On April 24, 2006, four (4) days prior to the closing of the first mortgage, Colsia, acting by and through his company MAK Investments, placed a second mortgage on Locapo's Hovey Street family home in the amount of $150,000.00 as the second and final monetary installment of the first payment toward the property.

32.     The remaining $100,000.00 was paid to Colsia and MAK in exchange for services rendered through Locapo's three (3) landscaping contracts completed by Locapo at another rental property allegedly owned by Colsia and/or MAK located at 199 Hilcroft Road:

    A.     On May 31, 2006, labor and landscaping materials at a cost of $25,000.00;

    B.     On June 30, 2006, labor and landscaping materials at a cost of $45,000.00;

    C.     On July 31, 2006, labor and landscaping materials at a cost of $30,000.00.

33.     Promptly after Colsia and MAK were paid the initial $550,000.00, Locapo began working and investing money into the remodeling of the property units including, but not limited to:

    A.     May 1st-3rd 2006 - mixed construction material at a cost of $5,300.50;

    B.     May 4, 2006 - mixed construction material at a cost of $3,861.10;

    C.     May 15, 2006 - mixed construction material at a cost of $2,351.40;

4

D.   May 22, 2006 - mixed construction material at a cost of $2,393.30;

E.   May 31, 2006 - the cost of construction material for floor joists, plywood, nails and sheet rock at a cost of $6,500.00;

F.   May 31, 2006 - labor costs for removal of construction materials from basement and commercial units, refinishing hardwood floors, 275 total man hours at a rate of $35.00 per hour totaling $9,625.00;

G.   July 10, 2006 - labor costs for construction of laundry facilities, replacing floors, windows and sheet rock and the addition of a time lock door at a cost of $25,735.00;

H.   October 29, 2006 - electrical construction in bathrooms, existing lights, emergency lighting, bath fan and outlet and cleaning up old wiring at a cost of $7,739.00;

I.   December 8, 2006 - the installation of a wall heater in the commercial salon at a cost of $858.68;

J.   December 9, 2006 - installation of extras for bathroom at a cost of $1,800.00;

K.   March 27, 2007 - installation of a new refrigerator in Unit #7 at a cost of $875.00; and

L.   May 31, 2007 - installation of a new refrigerator in Unit #1 at a cost of $875.00.

34.   The Plaintiff never obtained a deed to the property, however, believed he was the rightful owner.

35.   In October 2007, Mark Langenfield, (hereinafter referred to as "Langenfield"), was working with Locapo at the property when Colsia approached and informed he would not be able to assist him in obtaining financing for the property.  Locapo was also informed by Colsia that he would not be able to refund his initial investment or any monies he used to upgrade the property.

36.   Colsia breached the oral contract when he admitted he could not assist Locapo in obtaining the financing that was needed to pay the balance due on the property.

37.     Unbeknownst to the Plaintiff, Colsia did not hold the title to the property.

38.     Defendant MAK still holds a lien of the Hovey Street property and is currently attempting to foreclose on Locapo's family home.

39.     Colsia has had the benefit of the $550,000.00 despite the fact that he breached his agreement nor could he transfer title.

## COUNT I    FRAUDULENT MISREPRESENTATION

40.     The Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-39 not inconsistent herein.

41.     Colsia represented that he owned the property and that he assured Locapo that he would assist and get him a mortgage to pay the second payment of $600,000.00.

42.     Colsia falsely misrepresented himself as the owner of the property that he offered for sale to Locapo which Locapo reasonably relied upon to his detriment.  Colsia never had the ability to secure a mortgage for Locapo's benefit.

43.     Colsia was never the owner of the property which is the subject matter of this litigation.

44.     Locapo later found out that Dorothy Chapman was the manager of the property had offered Colsia the option to purchase the building on behalf of the owner of the building.

45.     Colsia intentionally and knowingly misrepresented material facts to Locapo.

46.     Locapo relied and acted upon the misrepresentations at the time he entered into a contract with Colsia to purchase the property.

47.     Colsia deliberately misled Locapo into believing he was the owner of the property and that Locapo would be purchasing the property from Colsia and that he could obtain financing.

6

48.    A limited liability corporation named, 40 Nashua Street, LLC, was, and still is, the real owner of the property which is the subject matter of this litigation.

49.    The deed to the property which is the subject matter of this litigation was last recorded on September 1, 2000, at Book 6285, Page 395, and titled to 40 Nashua Street, LLC, with an address of 1592 Coral Street, Merritt Island, Florida 32952.

50.    A corporation search in New Hampshire lists 40 Nashua Street, LLC, as an administratively dissolved corporation with a registered agent named Sheila M. Barnett.

51.    Colsia willfully, wantonly and deliberately presented the false facts as set forth herein with the intention of causing Locapo to act upon those false statements and cause Locapo harm.

52.    Colsia took Locapo's payment of $550,000.00 toward the purchase of the property knowing he did not hold title to the property.

53.    MAK Investments, acting under the direction of the owner, Colsia, took a second mortgage against Locapo's property in furtherance of this fraud since there was no consideration.

## COUNT II    COMMON LAW FRAUD

54.    The Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-53 not inconsistent herein.

55.    Colsia committed common law fraud against Locapo when he knowingly and with conscious disregard of the truth, falsely represented himself as the owner of the property which is the subject matter of this litigation, had the ability to obtain financing, and with the intent of causing Locapo to rely on his false statements of fact and caused Locapo to pay $550,000.00 toward the purchase price.

56.     Locapo justifiably relied upon Colsia's false statements when making the decision to enter into an oral contract for the purchase of the property.

57.     Colsia made representations with a conscious disregard of the truth when he offered to sell real estate to Locapo which he did not own nor could he obtain the necessary financing.

58.     Colsia's intention was to induce Locapo to pay $550,000.00 to him and his company and to obtain a second mortgage on the Hovey Street property by these false representations.

## COUNT III    UNFAIR OR DECEPTIVE ACTS

59.     The Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-58 not inconsistent herein.

60.     Starter engaged in unfair or deceptive acts when it facilitated and allowed the payment of the mortgage proceeds to be paid directly to Colsia and his company and failed to inform the Plaintiff of his right of rescission.

61.     By letter dated August 19, 2008, addressed to Locapo and signed by Diane Baia Claveloux of Starter, stated, "At the end of the closing we created a quick letter for you to sign authorizing us to issue your proceeds as requested".

62.     Proper business practices for this mortgage would require the placement of the funds into an escrow account until such time as the title of the property was undated and conveyed to Locapo.  Instead, the mortgage funds were paid directly to Colsia and MAK.

63.     Colsia, acting as an agent for Locapo, secured Hampton Bay Mortgage Company to provide the financing for the first mortgage on Locapo's home that was not encumbered prior to the financing provided by Hampton Bay Mortgage.

8

64.    New Hampshire RSA 358-A:2 provides that, "It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state."

65.    During the closing of the first mortgage, Colsia was present at the closing.

66.    Colsia insisted that the check should be made payable to him or to MAK rather than the normal procedure of making the monies payable to the owner of the home or held in escrow and failed to inform him of his right of rescission.

67.    Locapo, an unsophisticated consumer, relied upon Colsia, Starter and Hampton Bay Mortgage's expertise and to properly promote his best interest.

68.    Locapo trusted that Colsia, Starter and Hampton Bay Mortgage were acting in Locapo's best interest throughout the mortgage process and would use their expertise in assisting him.

69.    Starter and Hampton Bay Mortgage did not disclose to Locapo of his right to rescind and did not provide Locapo with the closing documents for his review three (3) days prior to the actual date of the closing contrary to Title 15 USC 1635(a).

## COUNT IV    CIVIL CONSPIRACY

70.    The Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-69 not inconsistent herein.

71.    The Defendants, in concert, agreed to engage in conduct that was designed to obtain $550,000.00 from the Plaintiff by using fraudulent methods and to obtain a second mortgage on the Hovey Street property.

72.    The Defendants knew that Colsia did not own the property, that Colsia was utilizing the services of the remaining Defendants to facilitate the fraud.

9

73.     The Defendants failed to comply with Federal Law concerning the issuance of a mortgage, disbursement of funds and failed to properly advise Locapo concerning the distribution of the proceeds.

74.     That, but for the conduct of all of the Defendants in concert with one another, this fraud would not have occurred.

## COUNT V     BREACH OF FIDUCIARY DUTY

75.     The Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-74 not inconsistent herein.

76.     Colsia, as agent of the Plaintiff, Starter, and Hampton Bay Mortgage did breach their fiduciary duty to Locapo when they failed to behave in a selfless fashion while they held a position of influence and trust over Locapo.

77.     All Defendants are well versed in the world of commerce and financing and Locapo entrusted his financial well-being to their competence and honesty.  The Defendants knew or should have known that Locapo was an unsophisticated investor and was relying upon their expertise and honesty.

78.     The Defendants failed to act in Plaintiff's best interest throughout this process despite the fiduciary relationship that existed.

79.     The Defendants betrayed Plaintiff's confidence and trust by their conduct thereby breaching their fiduciary duty.

## COUNT VI     CONVERSION

80.     The Plaintiff incorporates by reference all of the allegations contained in paragraphs 1-79 not inconsistent herein.

81.     Defendant Colsia committed theft by deception pursuant to N.H. Rev. Statutes 637.4 when he accepted monies from Locapo for the purchase of the property knowing that he was not the owner of the property nor did he have the ability to obtain financing for the transaction.

82.     Defendant, MAK Investments, committed theft by deception pursuant to N.H. Rev. Statutes 637.4 when it placed a mortgage on Plaintiff's family Hovey Street property without advancing any money, thereby encumbering the property and threatening foreclosure.

83.     Defendants, Colsia and MAK, have violated N.H. Rev. Statutes 637.4: I, which states, "A person commits theft if he obtains or exercises control over property of another by deception and with a purpose to deprive him thereof."

84..     Defendants, Colsia and MAK Investments, have violated N.H. Rev. Statutes 637.4; II,(d), which states, "For the purposes of this section, deception occurs when a person purposely (d) Fails to disclose a known lien, adverse claim or other legal impediment to the enjoyment of property which he transfers or encumbers in consideration for the property obtained, whether such impediment is or is not valid, or is or is not a matter of official record".

85.     That as a result of the Defendant, Colsia and MAK's, conversion of funds, the Plaintiff has been damaged.


WHEREFORE, the Plaintiff respectfully prays that judgment be entered against the Defendants, jointly and severally, for the following:

    A.     Actual damages in the amount of $764,913.88;

    B.     Enhanced compensatory damages and treble damages in the amount of $2,500,000.00;

    C.     Costs and attorney's fees;

D.    The discharge of the liens placed on the Hovey Street property; and

E.    For such other relief as may be fair and just.

HILLSBOROUGH COUNTY SHERIFF'S OFFICE
329 MAST ROAD
GOFFSTOWN, NH 03045

RETURN OF SERVICE

SHERIFF WRIT 09-18144-CP
HILLSBOROUGH COUNTY SC, NORTH

JOHN LOCAPO V. BRIAN COLSIA, MAK INVESTMENTS, LLC

10/20/2009


    I SUMMONED THE WITHIN NAMED BRIAN COLSIA BY LEAVING AT THE ABODE OF THE
WITHIN NAMED, BEING AT 51 BAXTER ROAD, MERRIMACK, NH, AN ATTESTED COPY OF
THIS WRIT AT 03:35pm.


_____
DEPUTY SHERIFF JILL CUMMINGS

HILLSBOROUGH COUNTY
SUPERIOR COURT NORTH

2009 NOV -2 P 4: 03

HILLSBOROUGH COUNTY SHERIFF'S OFFICE
29 MAST ROAD
GOFFSTOWN, NH 03045

RETURN OF SERVICE

SHERIFF WRIT 09-18144-CP
HILLSBOROUGH COUNTY SC, NORTH

JOHN LOCAPO V. BRIAN COLSIA, MAK INVESTMENTS, LLC

10/20/2009


    I SUMMONED THE WITHIN NAMED MAK INVESTMENTS BY LEAVING AT THE ABODE OF
BRIAN COLSIA, REGISTERED AGENT FOR THE WITHIN NAMED, BEING AT 51 BAXTER
ROAD, MERRIMACK, NH, AN ATTESTED COPY OF THIS WRIT AT 03:36pm.


                              DEPUTY SHERIFF JILL CUMMINGS

HILLSBOROUGH COUNTY
SUPERIOR COURT NORTH
2009 NOV -2 P 4:03

HILLSBOROUGH COUNTY SHERIFF'S OFFICE
329 MAST ROAD
GOFFSTOWN, NH 03045

RETURN OF SERVICE

SHERIFF WRIT 09-18144-CP

JOHN LOCAPO V. BRIAN COLSIA, MAK INVESTMENTS, LLC


HILLSBOROUGH, SS                                        10/28/2009


        IT HAS BEEN DETERMINED THAT THERE WAS A NON-EST SERVICE OF THIS WRIT
ON STARTER TITLE SERVICES FOR THE FOLLOWING REASON: UNABLE TO SERVE IN TIME
GIVEN.

_____
        DEPUTY SHERIFF M. MERRIFIELD

HILLSBOROUGH COUNTY
SUPERIOR COURT NORTH
2009 NOV -2  P 4: 03

HILLSBOROUGH COUNTY SHERIFF'S OFFICE
329 MAST ROAD
GOFFSTOWN, NH 03045

RETURN OF SERVICE

SHERIFF WRIT 09-18144-CP
HILLSBOROUGH COUNTY SC, NORTH

JOHN LOCAPO V. BRIAN COLSIA, MAK INVESTMENTS, LLC

10/20/2009

    I SUMMONED THE WITHIN NAMED DIANE CLAVELOUX
BY LEAVING AT THE ABODE OF THE WITHIN NAMED, BEING AT 79 BROOKLINE RD,
MASON, NH, AN ATTESTED COPY OF THIS WRIT AT 07:11pm.

_____
DEPUTY SHERIFF JILL CUMMINGS

HILLSBOROUGH COUNTY
SUPERIOR COURT NORTH

2009 NOV -2  P 4: 03

HILLSBOROUGH COUNTY SHERIFF'S OFFICE
29 MAST ROAD
GOFFSTOWN, NH 03045

RETURN OF SERVICE

SHERIFF WRIT 09-18144-CP
HILLSBOROUGH COUNTY SC, NORTH

JOHN LOCAPO V. BRIAN COLSIA, MAK INVESTMENTS, LLC

10/16/2009


    I SUMMONED THE WITHIN NAMED TD BANK BY GIVING IN HAND TO NOEMI COMOLLI,
PERSON IN CHARGE FOR THE WITHIN NAMED, BEING AT MAIN ST NASHUA, NH, AN
ATTESTED COPY OF THIS WRIT AT 09:16am.



_____
    DEPUTY SHERIFF JOSEPH WALLENT

HILLSBOROUGH COUNTY
SUPERIOR COURT NORTH
2009 NOV -2 P 4: 03

```
              HILLSBOROUGH COUNTY SHERIFF'S OFFICE
                        329 MAST ROAD
                     GOFFSTOWN, NH 03045

                      RETURN OF SERVICE

SHERIFF WRIT 09-18144-CP
HILLSBOROUGH COUNTY SC, NORTH
DOCKET NUMBER 09C587

JOHN LOCAPO V. BRIAN SOLSIA, MAK INVESTMENTS, LLC

                                              10/16/2009


     I ATTACHED THE MONEY, GOODS, CHATTELS, RIGHTS, AND CREDITS OF THE
WITHIN NAMED DEFENDANT BRIAN COLSIA AND MAK INVESTMENTS, LLC IN THE HANDS
AND POSSESSION OF TD BANK TO THE EXTENT ORDERED ON THE REVERSE SIDE OF THIS
```